PREMO SPECIALTY MFG. CO. v. JERSEY-CREME CO.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,083.

CORPORATIONS (§ 668*)—ACTIONS AGAINST FOREIGN CORPORATIONS—SERVICE OF PROCESS.

Under Code Civ. Proc. Cal. § 411, which authorizes suit against a foreign corporation doing business and having a managing or business agent, cashier, or secretary within the state, and service of process therein on such agent, cashier, or secretary, valid service may be made on the secretary of a foreign corporation, in an action for breach of a contract made and to be performed in California, where such secretary is in the state expressly to represent his corporation as to such contract, regardless of whether the corporation maintains a regularly established place of business in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603, 2627; Dec. Dig. § 668.*

Service of process on foreign corporation, see notes to Eldred v. American Palace-Car Co. of New Jersey, 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Olin Wellborn, Judge.

Action at law by the Premo Specialty Manufacturing Company against the Jersey-Creme Company. Judgment for defendant, and plaintiff brings error. Reversed.

This was an action brought by plaintiff in error, a California corporation, in the superior court of Los Angeles county, Cal., to recover for goods, wares, and merchandise consisting of aseptic straw dispensers, alleged to have been

sold and delivered f. o. b. at Los Angeles, Cal., to the defendant in error, a Texas corporation, and for certain aseptic straw dispensers manufactured at the request of the defendant in error to be delivered by the plaintiff in error f. o. b. at Los Angeles, Cal., and thereafter offered to be delivered, but by the defendant in error declined to be received. Service of summons was made upon T. E. Blanchard. In the return of service it was recited that said T. E. Blanchard was the treasurer of the defendant corporation and its business agent within the state of California. It was further recited that the defendant corporation was then doing business within said state. The suit was removed, upon the petition and special appearance of the defendant in error to the Circuit Court of the United States for the Southern District of California because of diverse citizenship. Thereupon the defendant, appearing specially for that purpose, moved to set aside and quash the service of summons and return upon the ground that the court had no jurisdiction of the action, because at the date of the service of summons the defendant was a foreign corporation organized under the laws of the state of Texas, and was not at the time doing business within the state of California; that T. E. Blanchard, upon whom summons was served in said action, was not at said time the managing or business agent of the defendant in the state of California, and was not at said time a cashier or secretary of the defendant corporation within said state; that defendant had never designated the said Blanchard as a person upon whom summons might be served within the state of California; that said Blanchard on said date was a resident and citizen of the state of Texas, and was only casually within the state of California at said date.

It appears that the defendant has its place of business in the city of Ft. Worth, Tex., where it is engaged in the manufacture and sale of an article designated as "Jersey-Creme" syrup. It has also a branch factory in the city of Chicago, in the state of Illinois. From the affidavits of W. G. Newby, the president, and T. E. Blanchard, the secretary, of the defendant corporation, introduced by the defendant in support of the motion to quash, it appears that within a period of two years next prior to October 18, 1910, the defendant had not had any agent of any description in the state of California, nor did it during said period pay a salary to any person in the state of California for the purpose of carrying on the business of the defendant in said state; that prior to the 13th day of September, 1910, the date of the service of summons in this action upon T. E. Blanchard in Los Angeles, Cal., the defendant had received orders by mail from California for small quantities of Jersey-Creme syrup, and had accepted such orders, and had sold and delivered small quantities of such syrup from its place of business in Ft. Worth, Tex., and from its branch factory in Chicago; that between the 1st of July and the 13th of September, 1910, defendant made four sales and shipments of Jersey-Creme to the state of California, and no more, the same being on mail orders, and to four different persons, and amounting in the aggregate in value to $253.13; that between the 13th day of September, 1910, and October 18, 1910, defendant had sold and shipped from its place of business from Ft. Worth to California, on a mail order, one 16-gallon of Jersey-Creme, and no more, and the value of this shipment was $20.

It appears, further, from these affidavits, that on the 13th of September, 1910, and for a long time prior thereto, T. E. Blanchard, upon whom summons was served in this case on said date in the city of Los Angeles, was a resident and citizen of the city of Ft. Worth, of the state of Texas, and was at that time the secretary and treasurer of the defendant company; that a few days prior to the 13th of September said Blanchard visited the city of Los Angeles for the purpose of ascertaining whether the plaintiff intended to carry out an agreement existing between the parties with respect to shipment and delivery by the plaintiff to the defendant at Ft. Worth, Tex., of certain aseptic straw dispensers, an appliance for distributing straws for drinks at soda fountains; that said Blanchard had no authority of any character from the defendant for any negotiations with the plaintiff, other than to ascertain and determine whether or not the plaintiff was to be relied on for further shipments of straw dispensers; that the whole time of the stay of

said Blanchard in the state of California did not exceed five days; that Blanchard was engaged during his visit of said five days solely and alone in ascertaining the facts with respect to the shipments desired by the defendant of straw dispensers as before stated; that the plaintiff was at that time manufacturing the said straw dispensers, and the defendant was using the same on purchases made by defendant from plaintiff, and on deliveries made from Los Angeles from the plaintiff to defendant at Ft. Worth, Tex.; that said Blanchard was not authorized or empowered by the defendant to transact any other business, of any character whatsoever than that above designated, for the defendant within the state of California, at said time; that the defendant on the said 13th day of September, 1910, had neither property nor place of business of any description within the state of California.

In the affidavit of T. E. Blanchard he charges: "That the plaintiff company, under the guise of negotiations and continued conferences with the said Blanchard with respect to the said matter of future shipments of straw dispensers, detained him in the said city of Los Angeles and procured to be served upon him the summons in this cause while so detained, and that the stay of the said Blanchard in the said city of Los Angeles was designedly prolonged by said plaintiff company, without the purpose of giving him definite answer to his demands in the behalf aforesaid, in order that the summons might be served upon him."

The plaintiff in error introduced in evidence, in opposition to the motion to quash, the affidavit of one G. E. Sturgis, dated November 17, 1910, who stated that ever since the month of March, 1910, he had had an office in Room No. 307, at 660 Market street, San Francisco; that since the month of February, 1909, he had been the sales agent at San Francisco of and for the defendant, and was the distributor at San Francisco for the product manufactured by the defendant; that for the purpose of advertising said product, and also for the purpose of indicating to the public, the affiant was and had been the agent of the defendant at San Francisco for the sale of said product, and affiant, about March, 1910, had caused to be painted and lettered upon the entrance door to affiant's said office, and underneath affiant's name, the words "Jersey-Creme," and affiant had the same words and letters painted upon the window of affiant's office looking out upon Market street, the principal street and thoroughfare in the city of San Francisco; that since he had become the agent of the defendant he had sold for the defendant its products in a number of cities in the state of California, mentioned in the affidavit. The plaintiff also introduced the affidavits of two dealers, one in San Diego and the other in Los Angeles, with respect to their sales of the defendant's product during the years 1908, 1909, and 1910.

There was also introduced in evidence by the plaintiff the affidavit of Alfred J. Bayer, who on the 19th day of November, 1909, was the president, and from the 1st day of July, 1910, to November 21st, 1910, the secretary, of the plaintiff corporation. To this affidavit was attached a written contract, entered into by the plaintiff and defendant on the 19th day of November, 1909, in the city of Los Angeles, Cal. The contract provides the terms and conditions for the manufacture and sale by the plaintiff and the purchase by the defendant of certain aseptic straw dispensers, described as small portable machines, 9 inches long, 6 inches high, and 4 inches wide, designed to contain and protect from dust and other impurities, the straws furnished to patrons at soda water fountains and similar places. The contract provided for the manufacture by the plaintiff for the defendant of 5,000 of these aseptic straw dispensers, to be shipped on the order of the defendant and delivered f. o. b. the cars at Los Angeles at a price mentioned, within a period of 12 months of the date of the execution of the contract. The contract was signed by C. J. Howell as secretary of the defendant corporation, who, it is alleged in the affidavit, came to Los Angeles from the state of Texas a short time prior to the date of the contract for the express purpose of entering into said contract with the plaintiff for and on behalf of the defendant corporation. It is alleged that the aseptic straw dispensers mentioned in the contract were manufactured by the plaintiff in the city of Los Angeles, state of California; that the causes of action set forth in the complaint in

this case are causes of action arising out of this contract between the plaintiff and defendant. The affiant denies that the stay of Blanchard in the city of Los Angeles was designedly or at all prolonged by the plaintiff company in order that summons might be served upon him, and recites the circumstances connected with the conference between Blanchard and the officers of the plaintiff company while he was in the city of Los Angeles.

In rebuttal defendant introduced in evidence the affidavits of T. E. Blanchard, the secretary and treasurer, and C. J. Howell, the vice president, of the defendant, both residing at Ft. Worth, Tex. To this affidavit is attached the agreement with Sturgis, dated January 19, 1909, under which he had charge of the sales of the defendant on the Pacific Coast, including California; also the correspondence between the defendant and Sturgis upon the subject; also the affidavit of Sturgis, dated December 5, 1910, in which he states that his previous affidavit, made by I. B. Dockweiler, attorney for the plaintiff, was misleading, unless all the facts relating to the business between defendant and affiant were stated, states that he has read the affidavits of T. E. Blanchard and C. J. Howell, and all the exhibits attached to said affidavits, the same being correspondence between the defendant and affiant, and that all the facts and statements contained in the affidavits and exhibits attached thereto were all true and correct, states, further, that the Jersey-Creme Company had nothing whatever to do with said business, or paying the rent therefor, in San Francisco, that during said time affiant represented several Eastern firms or corporations, for which firms he sold on a commission basis the following articles: Bottle washers, conveyors, filling machines, labeling machines, pasteurizers, and other articles; that the Jersey-Creme Company never had an office in the state of California that affiant knew of; that during the time from January 19, 1909, to September 7, 1910, he was only paid commission by the defendant, Jersey-Creme Company, for what small amount of Jersey-Creme which was sold on orders as stated in the affidavits of Blanchard and Howell; that all the orders for Jersey-Creme were billed from Ft. Worth, and the pay for the same was remitted in full to Ft. Worth, Tex.

Upon the affidavits and exhibits submitted by the plaintiff and defendant the court granted the motion and quashed the summons, on the ground that the evidence did not satisfy the court that at the time of the service of summons the defendant was either doing business or had a managing or business agent, cashier, or secretary within the state. The plaintiff brings the case here on writ of error.

Isidore B. Dockweiler, of Los Angeles, Cal., for plaintiff in error.
Drew Pruitt, of Los Angeles, Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). Section 411 of the Code of Civil Procedure of California, provides as follows:

"The summons must be served by delivering a copy thereof as follows: * * * If the suit is against a foreign corporation, or a nonresident joint-stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier or secretary."

There may be a question upon the facts stated in the affidavits whether the defendant company was doing business within the state of California with respect to the sale of the article designated as Jersey-Creme at the time service of summons was made upon T. E. Blanchard, the treasurer and secretary of the defendant company at Los Angeles, Cal.; but there can be no question about the business of the defendant in California in its dealings with the plaintiff in

the purchase of aseptic straw dispensers. The contract for the manufacture by the plaintiff and the delivery to the defendant of these articles was entered into by an officer of the defendant at Los Angeles, Cal., and the articles were delivered to the defendant under the contract f. o. b. the cars at that place, and the present action arises under the terms of that contract. It is elementary that in the delivery of goods to a common carrier under such a contract the carrier becomes the agent of the purchaser, and the delivery to the carrier is in legal effect a delivery to the purchaser. United States v. Andrews, 207 U. S. 229, 240, 28 Sup. Ct. 100, 52 L. Ed. 185. The deliveries of the articles mentioned in the contract were, therefore, made to the defendant in Los Angeles, Cal.

It is admitted in the affidavits introduced by the defendant that when T. E. Blanchard, the treasurer and secretary of the defendant company, was served with the summons in this case at Los Angeles, he had gone there from Texas as an officer of the defendant company for the purpose of conferring with the officers and directors of the plaintiff company concerning matters relating to this contract and for the adjustment of differences arising under its terms. With respect to this contract, made in California, the defendant was manifestly engaged in the transaction of business in California, and Blanchard, its agent, was authorized by the defendant to transact the business growing out of that contract in California. In St. Clair v. Cox, 106 U. S. 350, 354, 365, 1 Sup. Ct. 354, 357, 358 (27 L. Ed. 222), Mr. Justice Field, in discussing the jurisdiction of the court acquired by service of process on the agent of a foreign corporation, said:

"Formerly it was held that a foreign corporation could not be sued in an action for the recovery of a personal demand outside of the state by which it was chartered. * * * This doctrine of the exemption of a corporation from suit in a state other than that of its creation was the cause of much inconvenience, and often of manifest injustice. The great increase in the number of corporations of late years, and the immense extent of their business, only made this inconvenience and injustice more frequent and marked. Corporations now enter into all the industries of the country. The business of banking, mining, manufacturing, transportation, and insurance is almost entirely carried on by them, and a large portion of the wealth of the country is in their hands. Incorporated under the laws of one state, they carry on the most extensive operations in other states. To meet and obviate this inconvenience and injustice, the Legislatures of. several states interposed, and provided for service of process on officers and agents of foreign corporations doing business therein. Whilst the theoretical and legal view, that the domicile of a corporation is only in the state where it is created, was admitted, it was perceived that when a foreign corporation sent its officers and agents into other states and opened offices, and carried on its business there, it was, in effect, as much represented by them there as in the state of its creation. As it was protected by the laws of those states, allowed to carry on its business within their borders, and to sue in their courts, it seemed only right that it should be held responsible in those courts to obligations and liabilities there incurred. All that there is in the legal residence of a corporation in the state of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members. Its officers and agents constitute all that is visible of its existence; and they may be authorized to act for it without as well as within the state. There would seem, there-

fore, to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the states for which they are respectively appointed when it is called to legal responsibility for their transactions. The case is unlike that of suits against individuals. They can act by themselves, and upon them process can be directly served; but a corporation can only act and be reached through agents. Serving process on its agents in other states, for matters within the sphere of their agency, is, in effect, serving process on it as much as if such agents resided in the state where it was created."

The question in the case was whether a Michigan court had obtained jurisdiction over an Illinois corporation by service of process upon a person who, the return of the officer recited, was agent of the Illinois corporation in the place where served. Judge Field refers to the law of Michigan relating to service of process and the decision of the Supreme Court of that state in Newell v. Great Western Railway Co., 19 Mich. 336, holding that the service upon the agent of a railroad corporation was not a service upon the corporation unless at the time of such service he then in a manner impersonated the company. Referring to this character of agency, the opinion of Mr. Justice Field continues:

"According to the view thus expressed by the Supreme Court of Michigan, service upon an agent of a foreign corporation will not be deemed sufficient, unless he represents the corporation in the state. This representation implies that the corporation does business, or has business, in the state for the transaction of which it sends or appoints an agent there."

While the Supreme Court did not have before it the precise question now under consideration, the court does in effect determine that the service of process upon the agent of a foreign corporation who represents the corporation in the matter which is the subject of controversy in the suit in which service is made would be sustained. In the present case the service of process upon Blanchard was with respect to a matter within the sphere of his agency, and was therefore as much a service on the defendant as if the service had been upon Blanchard in the state where he resided.

In Estes v. Belford (C. C.) 22 Fed. 275, service of process had been made upon an agent of an Illinois corporation in New York state. The offices of the corporation were located in Illinois, and the officers resided there. The person served was the agent of the defendant corporation in the transaction out of which the suit arose. The corporation was doing other business in the state of New York by another agent, and the court was of the opinion that service upon that agent might well have been objected to; but with respect to the agent upon whom service was made the court said:

"The agent" (upon whom service was made) "is the agent in the very transaction out of which the suit arises. The corporation is found here doing business by this agent. If it was doing also some other business by another agent, and service had been made upon that agent, it might well be objected to. The statute, probably, does not mean any agent in any business, but the agent in the business in controversy in the suit."

With respect to the service upon such an agent the court said:

"This is not any hardship, or, if any, not an undue hardship, upon this defendant, as between it and the orators. It is compelled to answer away

from its domicile, but not any further away than it has gone voluntarily by its agents to do that which has given occasion for the process and its service."

In Cone v. Tuscaloosa Mfg. Co. (C. C.) 76 Fed. 891, the president of a foreign corporation was casually in the state of New York, when he was served with process in the case. The court (Judge Lacombe) said with respect to the sufficiency of this service:

"The circumstances that the president of the defendant corporation is here casually to discharge his duties as a public officer, and not on any business for the corporation, is immaterial, if the papers show that the corporation does business here. The cause is a removed one. Service on the president is undoubtedly sufficient, under the state law; and if the defendant corporation has come into the state to do business, it will be assumed to have assented to be bound by the state law."

In Houston v. Filer & Stowell Co. (C. C.) 85 Fed. 757, the plaintiffs were residents of Illinois, and the defendant was a Wisconsin corporation. Differences arose between the parties with respect to the fulfillment of a contract. The general manager of the defendant went to Chicago to confer with the plaintiffs concerning their differences, and service of summons was made upon him there in the suit arising out of such differences. The court said with respect to the sufficiency of the service on the general manager in that case:

"A corporation is not necessarily found in the county or district merely because one of its general officers may be there, though the officer be its general manager. But when he is in the county or district, under charge of the corporation, to do something with respect to the business upon which the suit is brought, and when his being there is not the result of fraudulent enticement, I can see no reason why service on him is not service upon the corporation, or why the corporation is not, in his person, and during the time covered by his presence for such purpose, itself present in the county or district. Had the matter been the manager's individually, and the suit been against him individually, there can be no doubt the service, under the circumstances stated, ought to be maintained; but the general manager was, for the time being, in the matter in which he was sent, the corporation, and brought to this county and district the presence of the corporation as effectually as that could be done. The corporation sending him to transact the corporate business was, within the limits of that business, itself present."

In Brush Creek Coal & Mining Co. v. Morgan-Gardner Electric Co., 136 Fed. 505, the defendant was an Illinois corporation. The suit was brought in the Western district of Missouri, where the defendant corporation never had an officer or an agency. The suit related to an alleged breach of contract on the part of the defendant with respect to the manufacture and delivery of certain machinery and appliances to Kansas City, Mo. Differences arose between the parties as to whether the appliances should be accepted by the plaintiff and upon what terms. An assistant to the defendant's general manager, having business in Wyoming for the corporation, stopped over at Kansas City on his return for the purpose of conferring with the plaintiff, and, if possible, adjusting their differences. While there he was served with a summons in the action relating to the differences in controversy. Judge Amidon, sitting in the United States Circuit Court, sustained the service, saying:

"It appears from the evidence taken upon the plea that the officer upon whom process was served in this case was a general officer of the defendant corporation, that he was in the state at the time of the service, engaged in the business of the corporation, having come into the state for that purpose alone, and that the matter in which he was then engaged on behalf of the defendant constitutes the very cause of action upon which the plaintiff bases its right to recover."

The court said further:

"Any individual may be served in any state where he is found without regard to the place of his residence. A corporation is entitled to no greater exemption. It ought to be held to be present in any state to which it sends its general officer for the transaction of its corporate business."

To the same effect is Norton v. Berlin Iron Bridge Co., 51 N. J. Law, 442, 17 Atl. 1079, Fond du Lac Butter & Cheese Co. v. Henningsen Produce Co., 141 Wis. 70, 123 N. W. 640, and Moulin v. Trenton Mutual Ins. Co., 24 N. J. Law, 233. We are in accord with the doctrine of these cases.

The service of process upon an agent of a foreign corporation, who comes into the jurisdiction of the court upon the business of the corporation which is the subject of the suit in which service is made, appears to be above all other class of agents the one upon whom service should be made, in order that notice may be promptly given to the corporation, and that it may be fully advised in the premises, and we see no reason why the foreign corporation doing business within the jurisdiction under such circumstances should not be bound by such a service.

With respect to the presence of Blanchard in Los Angeles at the time he was served with summons, the evidence is clear that he went there on behalf of the defendant company voluntarily, and without any improper inducement or fraudulent enticement upon the part of the officers of the plaintiff company. The charge that he was detained in Los Angeles by them for the purpose of securing the service of summons upon him we do not think has been sustained. We are accordingly of the opinion that the service of summons in this case was in accordance with the requirements of the statute of the state, and should be sustained.

The judgment of the lower court is reversed, with instructions to set aside the order quashing the service of summons and dismissing the action.