## HUNAU v. NORTHERN REGION SUPPLY CORPORATION.

### (District Court, S. D. New York. January 3, 1920.)

1. CORPORATIONS ⬥⟶642(4½)—FOREIGN COMPANY SUBJECT TO PROCESS WHERE AGENT HAS AUTHORITY TO CONCLUDE BARGAINS GENERALLY.

A foreign trading corporation, which sends an agent to New York, authorized to conclude bargains generally, is subject to local process in personam.

2. CORPORATIONS ⬥⟶642(6)—FOREIGN COMPANY NOT SUBJECT TO PROCESS IN PERSON UNLESS DOING SOME CONTINUOUS OR PERMANENT BUSINESS.

A foreign corporation is not subject to local process in personam in respect of each single transaction which it may authorize within the domestic jurisdiction, unless it does some "continuous" or "permanent" business within that jurisdiction.

At Law. Action by Adolph Hunau against the Northern Region Supply Corporation. On motion by defendant to quash service of original writ in personam. Motion denied.

The defendant is a foreign corporation organized under the laws of the "government of the Northern Region" of Russia, whatever that may be. It is in fact a co-operative buying and selling company, whose business is to buy American and English products, raw and made up, and to export all kinds of Russian produce in return. On May 20, 1919, the plaintiff, a citizen of New York, served one of the defendant's directors, Danichewsky, in New York, with a summons issued out of the state court, and attached a bank deposit of the defendant in a local bank. The moving papers described the plaintiff's claim as arising upon a contract to pay the plaintiff for services rendered in New York to one Konechko, an agent of the defendant, sent here upon the company's business. The defendant, appearing specially, removed the suit and got the attachment vacated. It then moved, still appearing specially, to quash the service on the ground that it was doing no business here. The matter was referred to a master, and is now argued upon exceptions to his report.

The master found the defendant to have done business under the following evidence:

The corporation, being organized in September, 1918, wrote a letter to a New York bank in October of that year, stating the kinds of goods it would like to buy, and requesting assistance and proper introduction for its representatives about to be sent, among whom was one Konechko. He was stated to have no authority to buy, but to be only a "specialist" in selecting goods. The bank was itself to give the orders of purchase, and the defendant would wire a transfer of the necessary funds. To effect this arrangement the defendant transmitted $47,000 to the bank.

Konechko arrived in New York in December, 1918, and began at once examining goods, and setting on foot negotiations with various sellers. These he continued until April 15, 1919, when Danichewsky, a director, arrived, who himself continued the business till May 20th, when the summons was served. It was to help Konechko in his dealings that he employed the plaintiff, according to the latter's story.

The bank apparently at once told the defendant that the suggested arrangement was not satisfactory to it, for on January 4, 1919, shortly after Konechko had arrived, the defendant in reply advised the bank that Konechko was authorized to buy goods and that his orders should be honored by them. On January 26, 1919, the defendant asked Konechko to postpone buying till the director, Danichewsky, should arrive, owing to the difficulties of receiving any goods at Murmansk during the winter season. This cable was not transmitted to the bank by either the defendant or Konechko. Before Danichewsky's arrival, Konechko had, however, concluded a contract with a local

company by which the defendant might purchase $200,000 worth of goods, and under that contract he had used up all or nearly all the deposit, $47,000, in actual purchases. Another large contract of purchase had been nearly concluded, and negotiations were opened with others. In all these the plaintiff helped him. These contracts appear to have been not for specific purchases, but apparently authorized the defendant to purchase goods as its agents might afterwards select. Danichewsky, on his arrival, canceled the existing contract, refused to complete that which was nearly concluded, and repudiated the supposed contract with the plaintiff.

The master thought that the defendant was "doing business" in New York generally and continuously, and that in any event, in respect of those matters out of which the cause of action arose, the defendant was subject to jurisdiction, regardless of any general business. He relied upon Premo Specialty Co. v. Jersey Cream Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015 (C. C. A. 9th Circ.), and Reilly v. Phil. & R. Ry. Co. (D. C.) 109 Fed. 349.

Philip A. Carroll, of New York City, for the motion.
Alphonse G. Koelble, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). [1] It appears to be still the federal law (People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537), despite International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, that the mere solicitation of business, by agents sent into a state without authority to conclude bargains, does not constitute "doing business" within its borders. Such was, of course, the ruling in Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, and International Harvester v. Kentucky, supra, must be deemed to rest upon the fact that the local agents had authority to receive negotiable paper in payment of orders which they had not the power to close. On the other hand, in New York, the last ruling of the Court of Appeals definitely held that a "continuous" and "permanent" business within the state, which consisted only of soliciting orders, was "doing business." Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915. A searching analysis of the whole subject would have been necessary if the case at bar raised that question. The theory upon which rests the right to sue a foreign corporation is in flux, and much may depend in the end upon what view becomes dominant.

In this case, however, it appears to me that the master is right under any rule, because Konechko had power to buy from January 4, 1919, on a power which he exercised in one instance, and was in course of executing in others, when Danichewsky intervened. The defendant's only business was to buy and sell goods between Russia and England and America, and when it sent a duly authorized agent, with power to buy them in New York, and he began what was designed to be a continuous business—at least so it must be assumed—I cannot well see what other business it could have done. The cable of January 26, 1919, did indeed direct Konechko to postpone any purchases till Danichewsky arrived; but I do not read it as curtailing his powers meanwhile, nor did Danichewsky question his intermediate purchase. It was based upon the difficulty of receiving goods at Murmansk, due to lack of berthing facilities, and was rather a direction of the manner in which he should exercise those powers. It is in this aspect signifi-

cant that it was never communicated to the local bank, as the cable of January 4, 1919, had been. I conclude that the defendant had begun a "continuous" and "permanent" business here. Danichewsky certainly had full powers after he arrived in April, nor does it appear that, at least until he left in May, the business of the defendant was intended to cease. At least, the project appears to have remained open on May 20, 1919.

[2] I do not mean to suggest, however, that the service will stand upon the second ground suggested by the learned master. I know of no authoritative decision that a corporation submits itself to local jurisdiction as to any single transaction performed in a foreign state. If so, it would be suable upon all local causes of action, regardless of any other business. Such, indeed, appears to have been the notion in Premo Specialty Co. v. Jersey Cream Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015, and was in 33 Harv. L. R. 10, attributed to my decision in Smolik v. Phil. & R. Ry. Co. (D. C.) 222 Fed. 148, though I was, at least consciously, quite innocent of any such purpose. I do not, however, understand this to be the law at all. How far a corporation is immanent in every authorized act of its agents anywhere, and what will be the eventual basis of its subjection to foreign process, it is not necessary to consider; but it is clear that at present some general activities are necessary. The last expression of the Supreme Court (Flexner v. Farson, 248 U. S. 289, 293, 39 Sup. Ct. 97, 63 L. Ed. 250) gives little encouragement to the "realists"; but it must be owned that no consistent theory can at present reconcile all the cases, certainly not all the opinions. At any rate, this case ought not to be the excuse for a general essay.

The motion is denied.