**DUKE, State Supervisor of Banking, v. PIONEER MINING & DITCH CO.**

(District Court, W. D. Washington, S. D.   May 17, 1922.)

No. 3430.

1. **Mines and minerals ⟢108—Foreign mining corporation held not "doing business within the state."**

A mining corporation of Nevada, engaged in mining in Alaska, owned stock in a bank in Washington in which it kept a checking account, and from which it borrowed money, giving notes payable at the bank. It also on three occasions in three years bought supplies in Washington for its Alaska business. *Held,* that no one nor all of such acts constituted "doing business within the state," within the meaning of Rem. & Bal. Code Wash. § 226, which subjected it to suit in that state on the notes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. **Corporations ⟢642(6)—Single business transaction in state held not to render foreign corporation subject to suit in relation thereto.**

A single business transaction in a state by a foreign corporation, incidental only to the business for which it is incorporated, as borrowing money from a bank and the giving of a note therefor payable at the bank, does not give a court in that state jurisdiction of an action against it on the note.

At Law. Action by John P. Duke, Supervisor of Banking of the State of Washington, in charge of liquidation of the Scandinavian-American Bank of Tacoma, against the Pioneer Mining & Ditch Company. On motion by defendant to quash service of summons. Motion granted.

Kelly & MacMahon, of Tacoma, Wash., for plaintiff.
Weter & Roberts, of Seattle, Wash., for defendant.

CUSHMAN, District Judge.   [1] Defendant moves to quash service of summons. The general statute of the state of Washington concerning service of such process provides:

"The summons shall be served by delivering a copy thereof, as follows: * * *

"9. If the suit be against a foreign corporation or nonresident joint stock company or association *doing business within this state,* to any agent, cashier or secretary thereof."
Rem. & Bal. Code, § 226.

The affidavits show the defendant to be a corporation of Nevada, principally engaged in mining in Alaska. Defendant has no mines, keeps up no office or place of business in this state, and maintains no agent therein. It carries on no general business in this state.

In brief, the plaintiff contends that defendant (having owned stock in the Scandinavian-American Banks of Tacoma and Seattle, carried a general checking account in those banks, and borrowed money of them) was doing business within this state so as to bring it within the statute, and further contends, because of the nature of the particular transaction which forms the basis of this action (the borrowing of the

money for which the suit is brought and giving a note therefor in this state, payable in this state), that there was such a particular doing business within the state as to support the jurisdiction and that a general agent of the defendant corporation, a resident of California (he being a director, assistant secretary, treasurer, and general manager thereof) while he was passing through the state of Washington from California on his way to Alaska, and while undertaking in the state a negotiation with a public officer in charge of the liquidation of the insolvent bank from which the money had been borrowed (such negotiation being concerning the legality of an assessment upon the capital stock of the bank), was an agent of the defendant upon whom service of process may be made under the statute.

All of these acts are incidental to the business of the corporation, whose principal business is that of mining. Do they constitute "doing business" as these words are ordinarily understood? A statute of California (Code Civ. Proc. § 411) provided for service of summons upon a foreign corporation "doing business * * * within this state." (As shown above, these are the words of the Washington statute.) Under the California statute the Circuit Court of Appeals for this Circuit has said:

"* * * Th question as to what kind of business by a foreign corporation within a state will justify a finding that it is engaged in business therein, and validate a service upon its agent, has been very thoroughly and elaborately discussed in the Circuit and Supreme Courts of the United States, and the general consensus of opinion is that the corporation must transact within the state some substantial part of its ordinary business by its officers or agents appointed and selected for that purpose, and that the transaction of an isolated business act is not the carrying on or doing business in a state." Doe v. Springfield Boiler & Mfg. Co., 104 Fed. 684, at 687, 44 C. C. A. 128, 131.

The acts done by or on behalf of the defendant in the state of Washington, while they may constitute a substantial part of the acts incidental to doing its general or ordinary business, would not constitute "part of its ordinary business," except as each incidental business transaction connected with the business in which a corporation is engaged is part of its ordinary business.

The defendant, upon three occasions during the three years preceding the giving of the note in question, purchased in Washington certain supplies for its business in Alaska. It has been contended that such action constituted a doing of business in Washington in the statutory sense. In the foregoing case, in the course of Judge Hawley's opinion, he cites with approval the following from Judge Thayer's decision in St. Louis Wire Mill Co. v. Consolidated Barb Wire Co. (C. C.) 32 Fed. 802, 805:

"* * * When it is said that a corporation is engaged in business in a foreign state, and for that reason has voluntarily subjected itself to the operation of the laws of such foreign state regulating service of process on foreign corporations, reference is plainly had to business operations of the corporation carried on within the state through the medium of agents appointed for that purpose *that are continuous, or at least of some duration,* and not to business transactions that are merely casual, such as an occasional purchase of goods or material within the foreign state." 104 Fed. at page 688, 44 C. C. A. 131.

The decisions are very numerous upon this question, but none of them called to the court's attention hold that doing such acts as those of the defendant, described above, constitute "doing business" in the state, particularly as Justice Field defines that expression in St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; that is, as equivalent to "engaging in business." Substantially the same question has been lately considered by Judge Bledsoe, in Knapp v. Bullock Tractor Co. (D. C.) 242 Fed. 543, by Judge Van Fleet, in Moore Dry Goods Co. v. Commercial I. Co. (D. C.) 276 Fed. 590, by Judge Learned Hand, in Hunau v. Northern Region Supply Co. (D. C.) 262 Fed. 181– 183, and by Judge Hough, in Day & Co. v. Schiff, Lang & Co. (D. C.) 278 Fed. 533. In Hayworth v. McDonald, 67 Wash. 496, 121 Pac. 984, the bond sued on was an attachment bond; that is, a bond given in a pending action.

If the meaning of the statute had been as contended, the more appropriate phrase of "doing *any* business within the state," or "concerning any business transaction within the state," or an expression of similar import, would doubtless have been used, instead of the words "doing business," which are equivalent to "engaging in business." There may be lines of business in which acts and transactions such as those here shown would encompass or permeate such business to such an extent as to appropriately fall within the statutory language, but such is not the mining business.

[2] It has been argued that, in the present suit, a different rule obtains because the suit is upon a purely Washington transaction. In Hunau v. Northern Region Supply Co., supra, where a similar contention was made, Judge Learned Hand, speaking for the court held:

"I do not mean to suggest, however, that the service will stand upon the second ground suggested by the learned master. I know of no authoritative decision that a corporation submits itself to local jurisdiction as to any single transaction performed in a foreign state. If so, it would be suable upon all local causes of action, regardless of any other business. Such, indeed, appears to have been the notion in Premo Specialty Co. v. Jersey Creme Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015, and was in 33 Harv. L. R. 10, attributed to my decision in Smolik v. Phil. & R. Ry. Co. (D. C.) 222 Fed. 148, though I was, at least consciously, quite innocent of any such purpose. I do not, however, understand this to be the law at all. How far a corporation is imminent in every authorized act of its agents anywhere, and what will be the eventual basis of its subjection to foreign process, it is not necessary to consider; but it is clear that at present some general activities are necessary. The last expression of the Supreme Court (Flexner v. Farson, 248 U. S. 289, 293, 39 Sup. Ct. 97, 63 L. Ed. 250) gives little encouragement to the 'realists'; but it must be owned that no consistent theory can at present reconcile all the cases, certainly not all the opinions. At any rate, this case ought not to be the excuse for a general essay." 262 Fed. at page 183.

The case of Premo Specialty Co. v. Jersey-Creme Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015, to which Judge Learned Hand makes reference is a decision by the Circuit Court of Appeals of this Circuit, Judge Morrow writing the opinion. Being a later case than the decision by Judge Hawley, already cited and quoted, this court would be bound to hold the latter decision (Doe v. Springfield Boiler & Mfg. Co., 104 Fed. 684, 44 C. C. A. 128) overruled, provided Judge Learned Hand is right in saying that, in this decision of Judge

Morrow's, it "appears to have been the notion" that a single business transaction in a state would be sufficient to uphold the jurisdiction of its courts over a foreign corporation in a suit arising out of such transaction.

In the case referred to the suit was to recover for certain merchandise sold in California to the defendant (a Texas corporation) and delivered to the defendant in California; that is, f. o. b. Los Angeles. The service of summons was made in September, 1910. The evidence showed five sales by defendant upon mail orders for goods shipped by it to California between July 1 and November, 1910. Upon motion to quash, an affidavit was filed in which affiant stated:

"* * * That since the month of February, 1909, he had been the sales agent at San Francisco of and for the defendant, and was the distributor at San Francisco for the product manufactured by the defendant; that for the purpose of advertising said product, and also for the purpose of indicating to the public, the affiant was and had been the agent of the defendant at San Francisco for the sale of said product, and affiant, about March, 1910, had caused to be painted and lettered upon the entrance door to affiant's said office, and underneath affiant's name, the words 'Jersey-Creme', and affiant had the same words and letters painted upon the window of affiant's office looking out upon Market street, the principal street and thoroughfare in the city of San Francisco; that since he had become the agent of the defendant he had sold for the defendant its products in a number of cities in the state of California, mentioned in the affidavit." 200 Fed. at page 354, 118 C. C. A. 460, 43 L. R. A. (N. S.) 1015.

This affidavit was later contradicted in important particulars by the affiant, who sought to place the responsibility for the first affidavit upon plaintiff's attorney; but, the above statements being against interest, their probative value would not, necessarily, be destroyed by affiant's repudiation. Judge Morrow states that—

"While there may be a question * * * whether the defendant was doing business within the state of California with respect to the sale" of its wares, "there can be no question about the business of defendant in California in its dealings with the plaintiff."

It will be noted that the opinion describes this single transaction with plaintiff as "business," which it was, and "dealing," which it was, but carefully refrains from describing it in the statutory words of "doing business." The question with which the writer of that opinion was chiefly concerned was whether "Blanchard, the treasurer and secretary of the defendant," a resident of Texas, who was in California for the sole "purpose of conferring with the officers and directors of the plaintiff company concerning matters relating to this contract, and for the adjustment of differences arising under its terms," was such an agent as that described by the statute, which provided for service upon a corporation "having a managing or business agent, cashier or secretary within the state."

The quotations made from the decisions reviewed by the court go rather to this latter point than particularly to the question of whether the corporations considered in those decisions were "doing business within the state." After reviewing and commenting upon these decisions, the court sums up its ruling on the entire case as follows:

"The service of process upon an agent of a foreign corporation, who comes into the jurisdiction of the court upon the business of the corporation which is the subject of the suit in which service is made, appears to be above all other classes of agents the one upon whom service should be made, in order that notice may be promptly given to the corporation, and that it may be fully advised in the premises, and we see no reason *why the foreign corporation doing business within the jurisdiction* under such circumstances should not be bound by such a service." 200 Fed. at page 359, 118 C. C. A. 465, 43 L. R. A. (N. S.) 1015.

Unless Judge Morrow held the defendant to have been doing business within the state, other than the single transaction in the suit, the words above italicized (the italics being those of this, and not that, court) are superfluous. I therefore conclude that the opinion in the case has been misconstrued and that it is in accord with the other decisions herein cited. No mention is made by Judge Morrow, in his opinion, of the earlier decision by Judge Hawley in Doe v. Springfield Boiler & Mfg. Co., 104 Fed. 684, 44 C. C. A. 128. If it had been the intention of the Court of Appeals in the later decision to depart from or qualify the rule laid down in that case by Judge Hawley—he having held that a corporation is not doing business within a state within the statutory meaning, unless it transacts within the state some substantial part of its ordinary business, and that the transaction of an isolated business act is not carrying on or doing business in a state—it would, doubtless, have made express reference to that decision. U. S. v. Moreland, 257 U. S. ——, 42 Sup. Ct. 368, 66 L. Ed. ——.

Judge Hanford, in Olson v. Buffalo Hump Min. Co. (C. C.) 130 Fed. 1017, was not considering the statute now before the court, but had before him a statute regulating service upon the agent required by the statute to be appointed for the purposes of service by a foreign corporation before being authorized to do business in the state. The two statutes are dissimilar. While, under the statute with which we are concerned, it is necessary that the foreign corporation be doing business within the state, section 3722, Rem. & Bal. Code (which was before Judge Hanford), provides that the agent shall be authorized to accept service or process in any action or suit pertaining to the business, property, or "transactions" of such corporation within this state, in which suit the corporation may be a party.

Motion to quash granted.