## FAVELL–UTLEY REALTY CO. et al. v. HARBOR PLYWOOD CORP.

### No. 29750.

United States District Court
N. D. California, S. D.

Nov. 20, 1950.

Joseph L. Alioto, San Francisco, Cal., for plaintiff.

George Herrington, and Orrick, Dahlquist, Neff, Brown & Herrington all of San Francisco, Cal., for defendant.

ERSKINE, District Judge.

Defendant has moved to quash the return of service of summons on the ground that the defendant was not and is not subject to service of process in this district. Defendant has also moved to dismiss the action on ground of improper venue in that defendant is not a resident of nor "doing business" in this district, or in lieu thereof to transfer the cause to the Western District of Washington, Southern Division.

The underlying facts are as follows: — In 1947 defendant corporation acquired purchase and cutting rights covering California timber and timberlands, the cutting rights to extend over a twenty-year period. In 1948 the defendant corporation assigned its interest in both the outright purchase contract and the cutting option to the United States Plywood Corporation. In consideration the defendant secured the right to buy from United States Plywood Corporation up to ten per cent (10%) of the production of a mill in Anderson, California, operated by the Shasta Plywood Corporation, a subsidiary of United States Plywood Corporation. From October, 1948 to date the defendant has made substantial and continuous purchases of pine plywood produced by the Shasta Plywood Corporation, a substantial proportion of which has been shipped at the direction of the defendant to its wholly owned subsidiaries in California. All of these purchases by defendant from the United States Plywood Corporation are invoiced from the New York office of United States Plywood Corporation directly to the defendant's office at Hoquiam, Washington; payments of such invoices are made directly from defendant's Hoquiam office to United States Plywood's New York office.

As to the relationship between the defendant and its wholly owned subsidiary, Harbor Plywood Corporation of California, the following facts are supported by affidavits: —

1. 52.9% of the total goods sold by said subsidiary was purchased from defendant.

2. In a prospectus filed with the SEC in 1947 the defendant stated that the subsidiary Harbor Plywood Corporation of California operated and maintained the company's branch sales office and warehouse in San Francisco (as contrasted with those branches operated by the company directly). Defendant claims that it does not maintain any offices or agents in California.

3. Agreements with the branch managers, including the branch manager in San Francisco, provide for the payment of a bonus of 20% of the profits of the branch, after deduction of 3% of net sales for administration, engineering, trade promotion by way of advertising in national trade journals, and other services performed by the Hoquiam office.

4. Material ordered by the subsidiary from the defendant and shipped to the subsidiary is invoiced and charged to the subsidiary. In some cases carload shipments are made direct from the defendant, or from the Shasta Plywood Corporation mill at Anderson, California, to a customer of the subsidiary.

5. With the exception of the vice-president of the subsidiary, who is also the branch manager in San Francisco, every director or officer of Harbor Plywood Corporation of California, at present and since 1947, is now or has been at one time since 1947 a director or officer of the defendant Harbor Plywood Corporation. Three of the present four officers of the Harbor Plywood Corporation of California hold substantially identical positions as officers of Harbor Plywood Corporation, the defendant.

Service on the defendant corporation was made in the manner prescribed by Section 6501 of the Corporation Code of California, in accord with the provisions of Rule 4(d)(7) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The first question before this Court is one of state law: Has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? In other words, is the state statute broad enough to cover the

assertion of personal jurisdiction over this defendant?

No California cases exactly in point have been brought to the attention of the court. However, in view of the opinions expressed in Sales Affiliates Inc. v. Superior Court in and for Los Angeles County, 96 Cal.App. 2d ——, 214 P.2d 541, and Thew Shovel Co. v. Superior Court of City and County of San Francisco, 35 Cal.App.2d 183, 95 P.2d 149; Cf. Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196, and Premo Specialty Mfg. Co. v. Jersey-Creme Co., 9 Cir., 200 F. 352, 43 L.R.A., N.S., 1015, this Court is of the opinion that the defendant was properly served with process in this action within the interpretation of the California statute by the California courts.

■ In so holding that the manner of service of process in the action was prescribed by the laws of California, this Court has merely approached, not overcome the real objections raised by the defendant. The application of the state statute under Rule 4(d)(7) is limited by the constitutional requirement of due process, as interpreted by the Federal Courts. Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33. Likewise, even though service was proper and effective, the jurisdiction of this Court over this particular action depends upon whether venue is properly laid here under the federal venue statute, 28 U.S.C.A. § 1391(c). Rule 4(d)(7) is of no assistance to the plaintiff unless these constitutional and statutory standards have been met.

■ Was the defendant in the instant case "doing business" in this district? This is the criteria that must be met. The apparently never-ending flood of cases on the subject is testimony that the formulation of a definitive criteria is almost impossible and that each case must rest on its own facts. Certain standards can be noted, however, particularly with regard to those activities and business relationships which have been most frequently the subject of litigation. For purpose of analysis the cases may be divided into three groups: (1) sales, including solicitation activities; (2) purchases; and (3) other activities including the maintenance of a stock of goods within the State.

■ The activity in question must be carried on by the individual or corporate defendant or his agent. The clear holding of the Supreme Court in Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, that the business of a wholly-owned subsidiary, despite complete financial and commercial domination by the parent corporation, is not the business of the parent, has never been overruled. Although the subsidiary may act as the agent of the parent in one or more respects, Williams v. Campbell Soup Co., D.C., 80 F.Supp. 865; Murphy v. Campbell Soup Co., D.C., 40 F.2d 671; Cf. Carroll Elec. Co. v. Freed-Eisemann Radio Corp., 60 App.D.C. 228, 50 F.2d 993; Moore Machinery Co. v. Stewart-Warner Corp., D.C., 27 F.Supp. 526, such a principal-agent relationship does not follow merely from the fact of the parent-subsidiary status, so long as the subsidiary remains a legally separate and independent entity. Plaintiff has failed to show any agency relationship in the instant case between the defendant and the Harbor Plywood Corporation of California. This conclusion obviates the necessity of reviewing the long line of cases, ending with International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, involving the question of how much more than mere solicitation by a sales agent of the foreign corporation is necessary to support a finding that the corporation is doing business in the state. The defendant in this case has no agents present in California soliciting business, nor does it maintain an office in this state. See Pan-American Airways v. Consolidated Vultee Aircraft Corp., D.C., 87 F.Supp. 926, apparently holding that those two factors alone are sufficient to support a finding that the foreign corporation is doing business in the state.

■ A single isolated transaction, such as the execution of the cutting contract, does not constitute "doing business". A more significant factor is the regular and

continuous series of purchases of plywood produced at the Shasta Plywood Corporation mill at Anderson, California, although the cases are not in complete accord as to the legal effect of such purchases. That the purchases were all invoiced in the Hoquiam, Washington office of the defendant and the New York office of the United States Plywood Corporation is significant, though not controlling; "the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics." Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900, 903.

■ Although it has been held that a systematic series of purchases within a state through agents sent into a state for that purpose is an important indication that the foreign corporation was doing business, Eastern Livestock Co-op. Marketing Ass'n. v. Dickenson, 4 Cir., 107 F.2d 116, and that even a single purchase may be a significant item taken in conjunction with other business activities within the state, Moe v. Stearns, D.C., 288 F. 992, the fact that purchases were made, standing alone and unaccompanied by other factors, is insufficient to subject the corporation to jurisdiction. On the contrary, the Supreme Court has held that the fact that purchases are made within the state does not warrant the inference that the foreign corporation is present within the jurisdiction. Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; see also Nagl v. Northam Warren Corp., D.C., 8 F.R.D. 130, and Duke v. Pioneer Mining & Ditch Co., D.C. 280 F. 883. An earlier Ninth Circuit decision to the contrary on similar facts, Premo Specialty Mfg. Co. v. Jersey-Creme Co., 9 Cir., 200 F. 352, 43 L.R.A.,N.S., 1015, is seemingly overruled by the Rosenberg case. Moreover, the Jersey-Creme case can be distinguished from the instant situation in that the finding that the Jersey-Creme Co. was doing business in California was based to a large extent upon the actual presence of its agent here, carrying on discussions with its vendor with regard to fulfillment of the purchase contract, a factor absent in the instant case.

■ A more difficult question is raised by the sales of this plywood, purchased in this district and delivered to customers here. The mere shipping of products into the forum in interstate commerce does not constitute doing business in the forum. Cannon Mfg. Co. v. Cudahy Packing Co., supra, even if the plaintiff seeking to establish jurisdiction is the vendee and the action relates to the products sold. Emery v. Adams, 6 Cir., 179 F.2d 586. The difficulty arises from the fact that the goods sold originated and remained within this jurisdiction. The Ninth Circuit Court has held, with little discussion or citation of authority, that a foreign corporation which shipped merchandise in bulk into California and warehoused it in San Francisco with a public warehouse forwarder for use in filling current and future orders was "doing business" here. Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196; Contra, Dixie Cotton Felt Mattress Co. v. Stearns & Foster Co., 7 Cir., 185 F. 431. Neither case involved goods purchased by the foreign corporation within the forum. On the other hand, however, the defendant in the instant case at no time maintained a stock of goods within this district.

Were it not for the extensive activities carried on by the agent of the foreign corporation within the state, the case of Certain-teed Products Corp. v. Wallinger, 4 Cir., 89 F.2d 427, would be controlling. The Certain-teed Products Co., a foreign corporation and the defendant in the action, had a contract with the U. S. Gypsum Corporation for the purchase of goods to be manufactured by a gypsum plant in Virginia, the forum, said goods to be shipped to defendant's customers in Virginia. The defendant was held to be doing business in Virginia. However, the activities of the Certain-teed Products Co. included the regular solicitation of sales by its agents in Virginia and supervision by a representative residing at the U. S. Gypsum plant of the shipments of gypsum from this Virginia plant; this representative also sent out letters from this location on stationery of the Certain-teed Products Co.

An additional element that may be significant is the fact that the alleged cause

100

of action arose out of activities of the defendant in this district. The Supreme Court has said that if the other activities of the corporation do not constitute "doing business" the fact that the cause of action arose within the forum is immaterial. Rosenberg Bros. & Co. v. Curtis Brown Co., supra. Recent trends appear to be to the contrary, at least so far as service of process is concerned. For example, the court in Bomze v. Nardis Sportswear, supra, noted that under the International Shoe Co. case a corporation's presence is "determined by balancing the opposed interest: the convenience of the obligee against the burden upon the corporation * * * it is almost always less burdensome to subject a corporation to the defense of actions so arising (out of those activities which made the corporation present) than to those arising elsewhere." 165 F.2d at page 35. Even if the validity of this argument be admitted, the difficulty in the instant case is that the alleged cause of action did not arise directly out of the activities which allegedly constitute "doing business", i. e. the purchases and sales within this district, but arose out of an earlier contract, a single isolated transaction, which, in turn, led eventually to the purchases. In other words, the suggestion of the court in the Bomze case seems to be directed towards the situation that would arise if the Shasta Plywood Corporation brought an action against the present defendant related to the plywood purchases. Accord, International Shoe Co. v. Washington, supra.

In summary, this Court is faced with a case involving several factors each of which alone is usually held to be insufficient to constitute doing business. At least one court has held that the combination of several such insufficient factors does not change the result; the corporation is still not doing business within the district. Oyler v. J. P. Seeburg Corp., D.C., 29 F.Supp. 927. It is, therefore, the opinion of this Court that the defendant Harbor Plywood Corporation was not and is not now doing business in this district. Defendant's motions to quash the return of service and to dismiss the action are hereby granted.