WICHITA FILM AND SUPPLY COMPANY, Respondent, v. F. L. YALE et al., Appellants.

Springfield Court of Appeals, March 22, 1916.

1. **CORPORATIONS: Foreign Corporations: Requirements as to: Statutes: Purpose.** The purpose of sections 3037, 3041, R. S. 1909, relating to the requirements as to foreign corporations doing business in Missouri, is to place such foreign corporations on an equality with domestic corporations and to impose the same burdens on them that domestic corporations have to bear.

2. ———: ———: "Doing Business:" Statutory Requirements. The term "doing business" as used in reference to foreign corporations "doing business" within Missouri is synonymous with conducting, managing and directing the business

3. ———: ———: Failure to Meet Requirements of Statute. Plaintiff, a foreign corporation, which had failed to comply with sections 3037–3041, R. S. 1909, relating to the requirements of foreign corporations doing business in Missouri, contracted with certain residents to furnish a chautauqua of a week's duration, provide the talent for the program, look after advertising and furnish the tent and seats therefor and employ door keepers and ticket sellers. Plaintiff corporation advertised in the newspapers that the enterprise was a permanent one and its agents sold tickets and arranged preliminary matters. The corporation was "doing business" within the State within the meaning of the statutes and not having complied with the requirements of the statutes relating thereto could not sue on the contract.

4. ———: ———: ———: Void Contracts. The entering into such a contract is an unlawful act and the contract is void.

5. INTERSTATE COMMERCE: Term Includes What. "Interstate Commerce" is not necessarily the sale of goods. It includes negotiations or contracts and dealings between citizens of different States which contemplate and cause importation whether it be goods, persons or information.

Appeal from Jasper County Circuit Court.—*Hon. Frank L. Forlow,* Special Judge.

REVERSED.

*Haywood Scott* and *F. M. Cummings* for appellants.

*C. H. Montgomery* and *William Keith* for respondent.

FARRINGTON, J.—The plaintiff, a Kansas corporation organized for pecuniary profit, brought suit against fifteen individual citizens of Joplin, Mo., and recovered a judgment for the sum of $1417 from which the defendants appeal.

A number of grounds are raised by the appellants in their brief which they urge as reversible error. The record before us is voluminous, covering the various phases presented to the trial court. However, as we find

one of the contentions of the appellants obviously well taken which clearly disposes of the case we will set forth only such of the facts as will indicate the ruling of this court.

The undisputed facts go to show that the plaintiff is a Kansas corporation organized for pecuniary profit; that its business, according to its charter, is to purchase and deliver films, moving picture machines, supplies, etc., for theaters of various kinds and to manage and control theaters, and to do a general moving picture and theater business; that acting under its charter, in furtherance of its business, it engaged in the business of furnishing, establishing and conducting public entertainments commonly called chautauquas; that on the 12th day of November, 1912, its authorized agent came to Joplin, Mo., and promoted a chautauqua to be held the following summer; that plaintiff through this agent, who the evidence clearly shows was authorized to act for plaintiff, entered into a contract with the defendants wherein the plaintiff agreed to "establish and conduct a chautauqua in or near the town of Joplin, State of Missouri, during the season of 1913," and undertook "to furnish said chautauqua complete with all talent for the program, all local and general advertising material, and a large auditorium tent with seats and equipment," and assume all financial responsibility of said assembly; it agreed that the chautauqua would extend over a period of not less than seven days with at least two sessions a day, afternoon and evening. In consideration that the plaintiff establish and conduct the said chautauqua the defendants agreed to accept 650 season tickets to said chautauqua and to pay for said season tickets before the opening of the chautauqua at the rate of $2 per ticket by placing the sum of $1300 to the credit of the plaintiff in a Joplin bank prior to the opening day of the chautauqua, with the understanding that said bank would pay over said $1300 to plaintiff as follows: $700 on the opening day, and $100 on each succeeding day thereof. It was further agreed that the defendants would share fifty per cent of the proceeds from the sale of any season tickets up to noon on the opening day over and

above the 650 heretofore mentioned. The gate receipts were to go to the plaintiff. The evidence further shows that misunderstandings arose between plaintiff and the defendants shortly before the chautauqua was to be held but probably after the talent had been engaged by the plaintiff. The sale of season tickets by defendants brought in but $525. A day or so before the chautauqua was to open the plaintiff sent its representative to Joplin to be there and to receive the first installment of $700 when there occurred a complete break between plaintiff and defendants, and at a meeting the representative of the plaintiff was offered the sum of $525 as a full release to the defendants of any obligation owing from them to plaintiff under the terms of the contract. This was declined, and the plaintiff went ahead and conducted the chautauqua. There is much space consumed in the record concerning the ability of the talent furnished, the plaintiff attempting to show that it was up to the average ordinarily furnished at chautauquas, and the defendants by their witnesses contending that the performances were little if any above that ordinarily seen at five cent vaudeville theaters.

The plaintiff's petition was based on the contract, alleging full performance and praying judgment against the defendants for the full sum of $1300, together with interest.

The answer, among other things, states that plaintiff was at all times mentioned in the petition a corporation organized under the general statutes of Kansas; that on the eighth day of August, 1913, it commenced doing business in Joplin in this State by way of selling admission tickets and season tickets to the general public and putting on a show, and continued to do so, claiming to be carrying out the terms of the agreement mentioned in the petition; that it went from Joplin to Pierce City in this State and engaged in the same line of business; and that neither prior to the signing of the contract nor before filing this suit, nor since, has the plaintiff complied with sections 3037 to 3041 inclusive of the Revised Statutes of Missouri, 1909, relating to the requirements of foreign corporations

doing business in Missouri, and avers that the plaintiff had failed to perform the requirements prescribed in said sections and was not authorized as a corporation to do business in this State, and prayed that the defendants be discharged.

The plaintiff in its reply admitted that it had not maintained a public office in Missouri, that it had not complied with the sections of the statutes pleaded in the answer, and alleges that it neither carried on nor proposed to carry on or conduct any business in the State of Missouri of a permanent nature such as is contemplated by the above-mentioned sections of the statutes; that the performers and lecturers who merely gave temporary entertainment not to exceed a week in duration in any one place were brought into the State of Missouri by the plaintiff for the purpose of conducting the chautauquas.

The evidence discloses that the plaintiff made arrangements with the various performers and lecturers to come into Missouri from other States, that it erected a tent on a vacant lot in the city of Joplin, employed a ticket seller, and managed and conducted the chautauqua for a week, and that several hundred people attended and purchased tickets from plaintiff's ticket seller.

Evidence introduced by the plaintiff disclosed that it intended to make the giving of chautauquas in Joplin, Mo., a permanent business; this is shown by an advertisement placed in one of the daily newspapers at Joplin by the plaintiff and introduced in evidence by the plaintiff, a part of which is as follows:

"A PERMANENT AFFAIR.

"The Wichita Bureau is a permanently organized company which will not go out of business with the passing of the present season. It expects to have dealings with this community again. Another season will find its advertisements in the columns of this newspaper telling the readers of other coming events in which they will be interested. The chautauqua soon to be given is being planned with this in mind. It will establish a relationship with the people of Joplin that will mean more

than the mere giving of one week of entertainment. The idea of permanency is uppermost. The cost of preparing for the 1913 chautauqua would be prohibitive were it not for the reasonable assurance that this community will ask for another entertainment similar in nature next summer.''

That the plaintiff intended to go into the permanent business of giving chautauquas in Joplin yearly is also disclosed by the undisputed testimony of some five or six witnesses introduced by the defendants.

The question therefore—decisive of this case—is whether the plaintiff was as a foreign corporation engaged in doing an intrastate business for pecuniary profit in the State of Missouri in violation of the statutes referred to, and is therefore prohibited from maintaining a suit for recovery on this contract. Our answer to this question is in the affirmative, and that the contract entered into and here relied on by plaintiff evidenced an intention on its part to carry on an intrastate business in Missouri, and does not evidence that what plaintiff did was an isolated transaction. "To conduct" is synonymous with "to manage," "to direct," "to carry on," "to do business," as will be found on consulting the leading lexicographers, and Words & Phrases. By the terms of the contract, therefore, plaintiff was to do such business as is incident to carrying on a chautauqua "in or near the town of Joplin, State of Missouri." By its own evidence, the plaintiff was engaged in establishing and conducting chautauquas; that was its business, done for the purpose of making a profit.

Seymour D. Thompson in his chapter on Foreign Corporations, 19 Cyc. at page 1280, in discussing this question, says: "' . . . under a sound interpretation of such statutes, the doing of business consists only of carrying on the operations of its trade for the making of profit.''

In the case of John Deere Plow Co. v. Wyland (Kan.), 76 Pac. l. c. 864, the court in dealing with the question under consideration, used this language: "Al-

194 M. A.—5

though the record in each case discloses but one transaction of the corporation, that transaction was not merely incidental or casual. It was a part of the very business to perform which the corporation existed. It did distinctly indicate a purpose on the part of the corporation to engage in business within the State, and to make Kansas a part of its field of operation, where a substantial part of its ordinary traffic was to be carried on. Therefore, although a single act, it constituted a doing of business in the State within the meaning of the statute, while several acts of a different nature might not have had that effect."

In the case of St. Louis Expanded Metal Fire-Proofing Co. v. Beilharz (Tex. App.), 88 S. W. 512, it is held that a contractor in St. Louis who agreed not only to furnish the material but to construct a building in Texas—furnishing the necessary material and labor—was engaged in intrastate business in Texas.

It was held in the case of Butler Bros. Shoe Co. v. United States Rubber Company, 156 Fed. l. c. 17, that "interstate commerce," is not necessarily the sale of goods, and that it includes negotiations or contracts and dealings between citizens of different States which contemplate and cause importation whether it be of goods, persons or information.

It was held in Gibbons v. Ogden, 9 Wheat, 1, 6 L. Ed. 23, that "commerce" includes more than "traffic"—"it is intercourse."

In the case before us, had the plaintiff merely made arrangements as a Kansas corporation to import the lecturers and performers to Joplin for the use of the defendants, there would be some basis for the plaintiff's contention that its contract and conduct amounted to nothing more than interstate commerce and therefore not subject to the Missouri corporation laws. But here we have a foreign corporation not only importing the talent but coming with its servants and agents and a tent in which its paid performers were to entertain. The selling of tickets to the general public, in other words, exchanging the fruits of its labor in organizing a chautauqua for the money of citizens of Joplin, was a Mis-

souri transaction. So far as those were concerned who bought tickets at the door, that transaction or that doing of business was certainly in the State of Missouri, and those transactions were not isolated nor were they merely incidental to the general scheme but were a carrying out of the purpose for which the plaintiff came into Missouri. The plaintiff here is in an attitude similar to that of the plaintiff in the case of Orr's Adm'r v. Orr (Ky. App.), 163 S. W. 757, where it is shown that the foreign corporation shipped its goods from Minnesota to Tennessee and from the last-mentioned State made distribution through an agent, and it was held that the interstate feature of the transaction ended upon the delivery of the goods to the agent in Tennessee, and that from that time on the handling of the goods was doing business in Tennessee; this point was the distinguishing feature between that case and our case of J. R. Watkins Medical Co. v. Holloway, 182 Mo. App. 140, 168 S. W. 290. The contract in the case under consideration was made in Missouri and was to be wholly and fully performed in this State by both parties.

It was said in the case of Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. l. c. 422, 90 S. W. 1020, that the purpose of our statutes is to place foreign corporations on an equality with domestic corporations and to impose the same burdens upon them that domestic corporations have to bear. To entitle a domestic corporation to do the business the plaintiff was doing, it must have become incorporated and paid the State an incorporation tax, and to be placed on the same footing, when engaged in the same business in foreign corporation must do the same. Domestic corporations have an office and officers upon whom service of process may be had in case they breach their contracts in doing business in Missouri; and so is the requirement as to foreign corporations. And it is said in that case that it was to prevent the happening of such contingencies that the statutes in question were principally enacted.

It is held in the case of Parke, Davis & Co. v. Mullett, 245 Mo. l. c. 176, 149 S. W. 461, that the regulation

of foreign corporations is for the purpose of subjecting them to inspection so that their condition might be known; further, that there be a protection to the public in subjecting foreign corporations doing business in this State to the jurisdiction of the courts of the State, and that the providing of revenue is *merely incidental.*

The entering into contracts such as the one under consideration is an unlawful act and the contract is void. [See, Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404, 90 S. W. 1020, which involved a contract to furnish theatrical exhibitions; Amalgamated Zinc and Lead Co. v. Bay State Zinc Mining Co., 221 Mo. 1. c. 14, 120 S. W. 31; Parke, Davis & Co. v. Mullett, 245 Mo. 168, 149 S. W. 461; Interstate Amusement Co. v. Albert Tenn.), 161 S. W. 488.]

The contract and the evidence clearly indicate that the plaintiff was engaged at Joplin and at Pierce City, Missouri, in the business of establishing and conducting a local enterprise wherein it dealt with the public at large in charging and taking money for the privilege of viewing and hearing its entertainment furnished by its paid performers. The evidence discloses that the transaction was not isolated, temporary or incidental, in connection with the plaintiff's business, but was a carrying on and a furtherance of its business of giving chautauquas for profit, and the witnesses for the defendants corroborate plaintiff's paid advertisement that it had come to Joplin to stay.

The cases cited by plaintiff holding that the right of a foreign corporation to sue for its property located in a State in which it has not met the local requirements are inapplicable here because the suit is for damages for breach of contract and seeks to recover on the void contract entered into. There is no claim in the petition that the defendants have any of the property or money the title to which is in the plaintiff.

The motion of the plaintiff asking to have this case transferred to the Supreme Court on the ground that a constitutional question is involved, is denied, as the validity of the act pleaded in defendants' answer is in no way questioned by either side; as was said in the

case of Hilgert v. Barber Asphalt Pac. Co., 173 Mo. 1. c. 326, 72 S. W. 1070, "Its construction was alone involved." The sections of the statutes involved in the determination of this case have been held constitutional by the Supreme Court in the case of Roeder v. Robertson, 202 Mo. 522, 100 S. W. 1086; and the Supreme Court in the case of State v. Campbell, 214 Mo. 362, 113 S. W. 1081, refused to entertain jurisdiction where a statute was attacked as unconstitutional when it had previously adjudicated the question.

It necessarily follows from what has been said that the judgment must be reversed, and it is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.