## WALTON N. MOORE DRY GOODS CO., Inc., v. COMMERCIAL INDUSTRIAL CO., Ltd.

(District Court, N. D. California, Second Division. October 17, 1921.)

No. 16619.

1. Corporations ⊙⟹668(4)—Service on stockholder or agent casually in state held not to give jurisdiction over foreign corporation.

Under Code Civ. Proc. Cal. § 411, providing for suit against "a foreign corporation * * * doing business and having a managing or business agent, cashier or secretary within this state" by service of process on such agent, cashier, or secretary, a federal court in California *held* not to have acquired jurisdiction of a personal action for breach of a contract made and to be performed at Vladivostok against a Russian corporation with its principal place of business at Vladivostok, and having no place of business or officer or managing agent in California, and not shown to have ever done business in the state, by service on a stockholder casual-

---

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ly in San Francisco on private business and an agent who when passing through on other business was authorized to call on plaintiff and if possible settle the claim in controversy.

**2. Corporations ⬤⟶642(6)—Isolated transaction is not "doing business" within state.**

The term "doing business," as used in Code Civ. Proc. Cal. § 411, prescribing the manner of serving process upon foreign corporations, is used in its broad and popular acceptation of meaning, and signifies something more substantial than a mere single or isolated transaction arising under a mode of dealing calling for neither a place of business nor a local agent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

At Law. Action by the Walton N. Moore Dry Goods Company, Inc., against the Commercial Industrial Company, Limited. On motion to quash service of summons and dismiss. Motion granted.

Motion to quash service of summons and dismiss the action for want of competent service upon defendant, a foreign corporation.

The plaintiff is a New York corporation having a place of business in San Francisco, where it carries on a wholesale dry goods business. and the defendant is a foreign corporation organized under the laws of Russia and doing business at Vladivostok and other points in the state or province of Siberia. The matter in suit grows out of the sale and consignment, some time prior to the bringing of the action, of merchandise by plaintiff in San Francisco to defendant in Vladivostok to be there paid for but the drafts for which were not honored on presentation, and it is alleged "that defendant then and there agreed with plaintiff that plaintiff should retake the said goods and ship the same out of Siberia, and should resell the same and charge the defendant with any loss which might be sustained by plaintiff in said transaction and which said defendant then and there agreed to pay to plaintiff;" that the consignment was thereupon reshipped to San Francisco by plaintiff and there sold, resulting in a loss to plaintiff which defendant has not paid and for which breach the action is brought.

The circumstances under which service in the action was had are these: In April, 1921, one Ivanoff called at the place of business of plaintiff in San Francisco bringing a letter of introduction from the defendant, wherein it was stated that the bearer "is our representative for the U. S. A. and Canada," and stated that, among other things, he was directed to "Settle the question about the goods which were shipped from Vladivostok." The interview of plaintiff with Ivanoff resulted in no adjustment of the demand, and the latter proceeded to New York, where the defendant maintains an office or place of business. Thereafter, about the 1st of August, 1921, Ivanhoff came to San Francisco to meet one Haieff, one of the principal owners or stockholders in the defendant corporation who was arriving from Vladivostok, and on the 2d of August Ivanoff and Haieff called at the place of business of the plaintiff in an endeavor to settle the matter in dispute between them. No adjustment was accomplished at this meeting, and a second conference was held on August 4th with no better success. On this latter date the plaintiff, having in the meantime had the action filed, procured the marshal to make service of summons upon both Ivanoff and Haieff, the return reciting as to each that he was served as "managing agent of defendant."

Thereupon the present motion was made. The affidavit of Ivanoff states that he was not, at the time of service, nor "at any time, or at all, the managing or business agent, cashier or secretary, or an officer or agent of aforesaid defendant or authorized by it to receive or accept service of summons upon it"; that he was in San Francisco on the occasion of the service merely temporarily and for the purpose of meeting Mr. Haieff and his daughter, who were Russians and could not speak the English language. in order to assist them and act as their interpreter in the matter of placing Mr. Haieff's

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

daughter in a young ladies' boarding school in California and to accompany Mr. Haieff to New York City. The affidavit of Haieff states that he was, on the occasion of the service upon him, "only temporarily and casually present in the city and county of San Francisco, state of California, and was not, and am not, present therein for the purpose of transacting business on behalf of defendant or of transacting any business except as hereinafter particularly set forth"; and, after referring to the service of summons upon him, states: "I am not now, nor was I at the time of the aforesaid pretended service of summons upon me, or at all, on or about the 4th day of August, 1921, or at any time, or at all, the managing or business agent, cashier or secretary or an officer or agent of aforesaid defendant or authorized by it to receive or accept service of summons upon it. After my home in Blagoveschensk, Russia, had been seized by the Bolsheviks, I, with my wife and children, escaped from Blagoveschensk to Harbin, China, and there decided to send my son Valentine first, and take my daughter Nadezda later, to the United States for the purpose of placing them in American schools for education, my wife and our remaining children to remain in Russia in accordance with said plan and for the further purpose of improving my health, which has been seriously impaired by reason of my previous experiences with the Bolsheviks in Russia; and for no other purpose, except as hereinafter mentioned, I have made this present visit to the state of California with my said daughter. I have entered my said son as a student at the University of California, and my said daughter at Castilleja School at Palo Alto, Santa Clara county, state of California. On or about the 2d day of August, 1921, and again on or about the 4th day of August, 1921, subsequent to all alleged happenings referred to in the complaint on file herein, I called on Walton N. Moore, president of plaintiff corporation herein, at his office in San Francisco, Cal., with Nicholas N. Ivanoff, who interpreted for me in the conversation which I then and there held with the said Walton N. Moore, since I have no knowledge of the English language, and I endeavored to ascertain from him upon what terms the controversy existing between plaintiff and defendant could be adjusted in order that I might make a report on the matter."

The affidavit of Walton N. Moore for the plaintiff states that Ivanoff and Haieff stated that they were authorized to settle the matter in dispute for the defendant; and there is an affidavit by one Garrissere in behalf of plaintiff to the effect that on August 20, 1921, the defendant purchased of a corporation represented by affiant a consignment of goods to be shipped to the Orient, and that in that transaction Ivanoff acted in behalf of and represented himself as the agent of the defendant, and that the goods were paid for by him by check drawn on a New York bank.

It does not appear that either of the parties upon whom service was made had any participation in the making of the contract in question or the transaction out of which it grew, or had anything to do therewith other than as above recited; nor does it appear that the defendant at the time of the service had or maintained within this state or district any office or place of business or carried on therein any general business transactions; that apparently the transaction in question was the only one pending at the time between the parties.

Gregory & Goodell, of San Francisco, Cal., for plaintiff.
Ambrose Gherini, of San Francisco, Cal., for defendant.

VAN FLEET, District Judge (after stating the facts as above). [1] A foreign corporation can be sued in a jurisdiction other than the state of its creation only when it is at the time doing business therein and maintains there a business or managing agent subject to service of process. Section 411 of the Code of Civil Procedure of the state, prescribing the manner of serving process of summons upon a defendant, provides for the delivering of a copy thereof as follows:

"If the suit is against a foreign corporation, or a nonresident joint-stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier, or secretary."

[2] In my view the facts fail to bring the defendant within the statute. It was neither "doing business" within the state nor did it have "a managing or business agent, cashier or secretary" therein within any proper interpretation of its terms. The term "doing business" is used in its broad popular acceptation of meaning and signifies something more substantial than a mere single or isolated transaction arising under a mode of dealing calling for neither a place of business nor a local agent. The right of exemption of a foreign corporation from suit in a jurisdiction foreign to the state of its organization is one of substantive value and is not to be taken away by refinements based upon mere casual transactions which do not bring it in some definite substantial way within the ordinary meaning of the language of the statute. This will be found to be the effect of the more recent decisions of the Supreme and federal courts upon the subject, although there is some diversity of view found in cases from the state courts arising largely out of differences in local statutes.

As stated by Mr. Justice Brandeis in Phila. & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state *in such manner and to such extent* as to warrant the inference that it is present there. And even if it is doing business within the state the process will be valid only if served upon some authorized agent. St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 226. Whether the corporation was doing business within the state and whether the person served was an authorized agent are questions vital to the jurisdiction of the court." (Italics volunteered.)

And see, also, Toledo Rys. v. Hill, 244 U. S. 49, 37 Sup. Ct. 591, 61 L. Ed. 982, and People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

A like view is taken by the Circuit Court of Appeals of this circuit in Doe v. Springfield Boiler & Manufacturing Co., 104 Fed. 684–687, 44 C. C. A. 128–131, wherein, in construing the same section of the Code, it is said:

"Legal service of process upon a corporation, which will give a court jurisdiction over it, can be made only in the state where it resides by the law of its creation, or in a state in which it is actually doing business at the time of service, in the manner prescribed by the statutes of that state or of the United States. The question as to what kind of business by a foreign corporation within a state will justify a finding that it is engaged in business therein, and validate a service upon its agent, has been very thoroughly and elaborately discussed in the circuit and supreme courts of the United States, and the general consensus of opinion is that the corporation must transact within the state *some substantial part of its ordinary business* by its officers or agents *appointed and selected for that purpose,* and that the transaction of an isolated business act is not the carrying on or doing business in a state." (Italics volunteered.) Citing a large number of authorities.

And as to the character of the agent upon whom process may be made under the statute it is further said in that case:

"The term 'business agent,' as used in the statute, does not mean every man who is intrusted with a commission or an employment by a foreign corporation. * * * The statute was never intended to include under the term 'business agent' every person who might incidentally or occasionally transact some business for a foreign corporation. Its meaning must be drawn from the general context of the language used. The business agent mentioned in the statute means one bearing a close relation to the duties of managing agent, cashier, or secretary of the corporation. It must be an agent who is appointed, designated, or authorized to transact and manage one or more distinct branches of business, which may be, and is, conducted and carried on by the corporation within the state where the service is made—one who stands in the shoes of the corporation in relation to the particular business managed, conducted, and controlled by him for the corporation."

The facts here fall far short of meeting plaintiff's necessities under the principles thus announced. Neither the character of the business nor the authority of the agents bring it within the rule. While the agents may have been authorized to settle the matter in dispute, they were not agents of defendant in any general sense. To the same effect, see Cady v. Associated Colonies (C. C.) 119 Fed. 420–425; United States v. American Bell Telephone Co. (C. C.) 29 Fed. 17, 27, 41; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Ladd Metals Co. v. American Mining Co. (C. C.) 152 Fed. 1008; Welch v. Farmers' Loan & Trust Co., 165 Fed. 561, 91 C. C. A. 399.

In Louden Machinery Co. v. American Malleable Iron Co. (C. C.) 127 Fed. 1009, it is said:

"The defendant had no office, place of business, agent, agency, or property in Iowa, and never had. * * * As yet, I cannot believe that a foreign corporation, having a difference with an Iowa citizen concerning a contract not made in this state, surrenders itself to the Iowa courts because an agent, with or without authority, comes to this state, seeking to adjust such difference. If such be the law, then compromises, so much favored by law, are largely at an end as to foreign corporations."

And in Wilkins v. Queen City Savings Bk. & Trust Co. (C. C.) 154 Fed. 173, it is said:

"I do not understand that Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, is authority for the proposition that presence of an officer of a foreign corporation in this state for the purpose of discussing a proposed adjustment of the single controversy between it and plaintiff is sufficient to establish such a 'doing business within the state' as will take the case out of the rule laid down in Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517, and Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113."

The case of Premo Specialty Mfg. Co. v. Jersey-Creme Co., 200 Fed. 352, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015, from this circuit, principally relied upon by plaintiff, is readily distinguishable from the case of Doe v. Springfield Boiler & Mfg. Co. In the former case the facts showed that the contract sued upon was made and was to be performed in Los Angeles, where the suit was brought, and that the party upon whom service was made was, at the time, the secretary of the corporation and had come to Los Angeles where he was served, with reference to business transactions theretofore had between the parties, out of one of which the cause of action arose. In the present

case it is conceded that the contract sued upon was made and was to be performed at Vladivostok; and that the parties served were neither of them officers of the company in any other respect than that Ivanoff was a general business representative of defendant for Canada and the United States having his headquarters in New York, and had been merely specially requested to ascertain upon what terms the controversy between the parties could be accommodated. It is apparent therefore that there is nothing in that case which is at variance or out of harmony with the ruling in the case of Doe v. Springfield Boiler & Mfg. Co., and no purpose on the part of the court to ignore or depart from the principles announced in the latter case can be deduced from anything said in the former.

To hold the defendant amenable to the jurisdiction of this court, under the circumstances presented, would, I think, be rather harsh and inequitable as allowing the plaintiff to take advantage of a situation which does not in any substantial respect bring it within the right it invokes.

The motion to quash must be granted, and the action dismissed. Such will be the order.