THE STATE OF MISSOURI, to the Use of Monroe County, Respondent, v. THE PIONEER CREAMERY COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.   Opinion Filed November 7, 1922.

1. **CORPORATIONS: Foreign Corporations: Failure to Become Domesticated: Prosecuting Attorneys: Authorized to Sue in Name of State.** In view of sections 736 and 9793, Revised Statutes 1919, requiring prosecuting attorneys to commence and prosecute all actions in which the State or county is concerned, and to institute proceedings against foreign corporations which failed to comply with the laws of this State in order that it might become domesticated, a county prosecuting attorney is the proper officer to institute a suit in the name of the State against a foreign corporation having a branch office in this State for failure to comply with section 3039, Revised Statutes 1909, authorizing it to do business in this State, even though the attorney general may possess similar powers and authority under sections 696 and 9825, Revised Statutes 1919.

2. **INTERSTATE COMMERCE: Foreign Corporations: Soliciting Business in State: Incident to Interstate Business: State cannot Impose Restrictions.** State laws cannot impose burdensome restrictions upon interstate commerce, and laws enacted by a State for such purpose do not apply to soliciting business in a State by a foreign corporation which is merely an incident of its regular interstate business and inseparable therefrom.

3. **————: ————: Establishing Branch Office in State to Sell or Purchase Products: Doing Business in State not Relating to Interstate Commerce.** Where a foreign corporation establishes a branch office in a State for the purpose of selling its products or purchasing products for its use, it is doing business within the State, and such business does not relate to interstate commerce and the corporation is subject to the laws of the State imposing conditions upon the right of foreign corporations to do business therein.

4. **————: ————: ————: Buying Products in State: Intrastate Business.** Where the business of a foreign corporation in this State was that of buying milk, its business was intrastate and within the power of the State to regulate, as the purchase of the milk involved no question of obligation for the delivery to defendant company, nor was there any requirement in the transaction that such milk should be shipped in interstate commerce, and it was carrying on of business strictly local in character and peculiarly within the exclusive control of the State.

Appeal from the Circuit Court of Monroe County.—*Hon. Charles T. Hays,* Judge.

AFFIRMED.

*Wilson & Schmiedeskamp* and *J. H. Whitecotton* for appellant.

*James J. Browning* for respondent.

NIPPER, C.—This action was brought by the Prosecuting Attorney of Monroe County against the defendant, an Illinois corporation, in which it is alleged that the defendant failed to comply with the laws of this State in order that it might become domesticated. Defendant demurred to the petition, which demurrer was overruled, after which defendant filed its answer, and the case was tried before the court without a jury, which court rendered judgment for plaintiff by decreeing that plaintiff have and recover of and from defendant a fine in the sum of $1000. From this judgment defendant appeals.

The case was tried upon the following agreed statement of facts:

"1. That the defendant was at the time of the acts complained of and now is, a corporation for pecuniary profit organized under the laws of the State of Illinois and was neither a railroad nor insurance company.

"2. That the defendant at the time of the acts complained of had not complied with the requirements of section 3039 of the Revised Statutes of Missouri or received license or certificate from the Secretary of State authorizing it to do business in the State of Missouri, but since that time has complied with such section and received such license or certificate from the Secretary of State of Missouri, authorizing it to do business in the State of Missouri.

"3. That the acts complained of are as follows: That the defendant rented a store room at Madison in

the County of Monroe and State of Missouri, where a sign, 'The Pioneer Creamery Co.,' was put up by the defend- ant, store room was in charge of one Paris Kellum, who was in the employ of the defendant as a cream buyer of the defendant and bought for the defendant at Madison, Mo., cream, which he shipped to the defendant at the city of Quincy, in the State of Illinois, and was there in said city of Quincy, manufactured by the defendant into butter at its creamery there located and that said Kellum was not a drummer or a traveling salesman.

"4. That the defendant at the time of the acts complained of and theretofore was in the business of manufacturing butter outside of the State of Missouri at its creamery in the City of Quincy, in the State of Illinois, and of buying cream in the State of Illinois and elsewhere and manufacturing butter from said cream outside the State of Missouri, at its said creamery in said City of Quincy, from and at which creamery in said City of Quincy the defendant sold and filled and shipped orders for its product received from its customers living in Illinois and elsewhere, and that all the cream purchased in the State of Missouri was purchased for the purpose of being and was manufactured into butter at its creamery in the City of Quincy, Illinois.

"5. That the only acts of the defendant complained of are as above set forth in items 2 and 3 of this stipulation and that the defendant had no creamery or manufacturing plant in the State of Missouri, and neither manufactured nor sold nor filled orders for any of its commodities or products within the State of Missouri."

The defendant urges two grounds for reversal in this court: First, that the prosecuting attorney had no authority to maintain this suit; second, that the acts of defendant in buying cream in Monroe County, Missouri, were merely incidental to its traffic in interstate commerce, and that such acts did not constitute "doing business" in the sense that it would be required to comply with the law requiring foreign corporations to become domesticated.

Defendant contends that the provisions of section 9825, Revised Statutes 1919, the same being part of the Act of May 30, 1919, take away from the prosecuting attorneys the rights and duties conferred upon them by virtue of section 9793.

Section 9825 makes it the duty of the Secretary of State, when he believes that any foreign corporation is transacting business in this State in violation of the law with respect to corporations, to investigate, and, if in his judgment there is probable cause to believe that any of the fines, forfeitures, and penalties provided in any law of the State for such violation can be recovered, he shall submit the result of his investigation to the attorney-general of the State, and it shall be the duty of the attorney-general to proceed against such corporation "as provided by law."

Section 9793, which has been upon the statute books of this State since 1891, prescribes the penalty for the failure of corporations doing business in this State to comply with certain requirements imposed upon them by law, and makes it the duty of the Secretary of State to report to the prosecuting attorney of the county in which the business of such corporation is located; and requires the prosecuting attorneys to institute proceedings to recover the fine therein provided for.

Section 9793, supra, has not been specifically repealed by any act of our Legislature, nor do we think it can be said that it has been repealed by implication.

Section 736, Revised Statutes 1919, which was section 1007, Revised Statutes 1909, provides that the prosecuting attorneys shall commence and prosecute all civil and criminal actions in their respective counties in which the county or State may be concerned, defend all suits against the State or county, and prosecute forfeited recognizances and actions for the recovery of debts, fines, penalties, and forfeitures accruing to the State or county. This has, in substance, been the policy of this State since 1825. In 1872, the Legislature abolished the office

of Circuit Attorney, and provided for the election in each county of a Prosecuting Attorney.

Section 696, Revised Statutes 1919, makes it the duty of the attorney-general to institute in the name and on behalf of the State, all civil suits and other proceedings at law or in equity necessary to protect the rights and interests of the State, and to enforce all claims against any and all persons or corporations in whatever court such action may be necessary. This, in substance, has been the law since 1868. The history of this legislation, as well as a discussion of the powers and duties of the prosecuting attorneys in this State, may be found in State ex rel. v. Lamb, 237 Mo. 437, 141 S. W. 665, wherein it is said, l. c. 451:

"Whatever may be the proper construction of Section 970 as to the duties of the Attorney-General, it is clear that during all the time since the early territorial days the local State's attorney has been the proper legal representative of the State to institute proceedings in behalf of the State, and in no respect has that power been curtailed by legislation. In a strict historical sense, the prosecuting attorney represents the State and exercises powers analogous to those exercised by the Attorney-General in England."

In State ex rel. Wear v. Springfield Gas & Electric Co., — Mo. App. —, 204 S. W. 942, it was held that a prosecuting attorney had the right to maintain an action in a court of equity on behalf of the State to enjoin a nuisance. But the court also stated, l. c. 946:

"We do not wish to be understood as indicating that we think that the authority to institute and prosecute a cause of the character with which we are now dealing is exclusively in the prosecuting attorney. Section 970, Revised Statutes 1909, would, in our judgment, authorize the Attorney-General to institute on behalf of the State equitable proceedings to enjoin the destruction of fish in the manner set out in plaintiff's petition," etc.

In addition to the specific direction contained in section 9793, supra, it would seem to be the general policy

of the State, as evidenced by its legislative enactments, that the prosecuting attorney is the proper officer to institute the proceedings in question, even though the Attorney-General may possess similar powers and authority. We rule this first point against the contention of defendant.

We pass now to the next contention of defendant, that the business in which defendant was engaged at Madison, Missouri, was interstate commerce and not intrastate, and that, therefore, the defendant was not required to comply with the Missouri law with respect to foreign corporations doing business in this State. The question of whether or not a foreign corporation is doing business in this State is largely affected by the issues involved. If the question relates to the right to serve process upon the corporation, or the right of the corporation to maintain action against a resident of this State, a different proposition is presented than is presented where it relates to the right and power of the State to impose conditions or restrictions upon the right of a foreign corporation to do business here; and, even though the business of a foreign corporation is interstate, it may be held to be doing business within the State so as to subject it to suit therein. The State, however, cannot impose burdensome restrictions upon interstate commerce, and, laws enacted by a State for such purpose are held not to apply to soliciting business in a State by a foreign corporation, which is merely an incident of its regular interstate business and inseparable therefrom. [International Text Book Co. v. Pigg, 217 U. S. 91.]

In L. R. A. 1916E., page 239, the annotator has this to say with reference to this question:

"These decisions that soliciting business of a purely interstate character is not doing business in a State within the purview of its statutes relative to foreign corporations transacting business in the State, and imposing burdensome restrictions thereon, are therefore not persuasive authority as precedents on the general question of when a foreign corporation is doing business in a

State, for they are necessarily restricted by the rule referred to, denying the right of the States to impose burdensome restrictions upon interstate commerce.''

However, it is a general rule that, where a corporation establishes a branch office in the State for the purpose of selling its products or purchasing products for its use, it is doing business within the State and such business does not relate to interstate commerce, and the corporation is subject to the laws of the State imposing conditions upon the right of foreign corporations to do business therein. [Banker Brothers Co. v. Pennsylvania, 222 U. S. 210; Westerly Shirt Co. v. Kaufman, 145 N. Y. Supp. 68; Chicago Mill & Lumber Co. v. Sims, 197 Mo. 507, 95 S. W. 344.]

We find a contrary ruling in McNaughton Co. v. McGirl, 20 Mont. 124, where it was held that, where a corporation sent its agent into another State to buy wool to be consigned to its wool house in a different State from where the purchases were made, and where it maintained its principal place of business, such transactions pertained solely to interstate commerce or traffic between States. But we are of the opinion that the court below was right in holding that the business in which defendant was engaged was intrastate and within the power of the State to regulate, because the purchase of the milk by the agent at Madison was the carrying on of business strictly local in character and peculiarly within the exclusive control of the State. Such purchases were separate and apart from interstate commerce, and involved no question of obligation for the delivery of the property to the defendant company, nor was there any requirement in the transaction that such milk should be shipped in interstate commerce. The transaction was complete before interstate commerce began, and there was no element in the contract of purchase that the milk should be shipped to the defendant company in Illinois.

As stated in Browning v. Waycross, 233 U. S. 17:

''It is manifest that if the right here asserted were recognized or the power to accomplish by contract what

is here claimed, were to be upheld, all lines of demarcation between national and State authority would become obliterated," etc.

It would naturally follow that every kind of business transacted in this State for the purchase of material of any kind which was afterwards shipped to another State and manufactured into a finished product, would or could be made interstate commerce. The business transacted by the defendant in this State was separate and distinct from interstate commerce, and subject to the laws of this State governing foreign corporations. [Browning v. Waycross, supra, Wichita Film & Supply Co. v. Yale, 194 Mo. App. 60, 184 S. W. 119; State ex rel. v. Robertson, 271 Mo. 475, 196 S. W. 1132; National Refrigerator Company v. Southwest Missouri Light Co., — Mo. —, 231 S. W. 930.]

It follows, therefore, that the judgment of the trial court should be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.