[Civ. No. 11148. First Appellate District, Division One.—October 17, 1939.]

THE THEW SHOVEL COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondents.

Dinkelspiel & Dinkelspiel for Petitioner.

R. G. Partridge for Respondent.

WARD, J.—Petition for a writ of prohibition to restrain the Superior Court in and for the City and County of San Francisco from taking any further proceedings in connection with a suit for damages for personal injuries brought by Fred Hudson against petitioner, following denial of petitioner's motion by special appearance to quash service of summons.

The petition is directed to the following points: Was the defendant corporation, petitioner herein, doing business in California at the time of the injuries to Hudson, and at the time of the service of summons (Code Civ. Proc., sec. 411), and was the service of process upon C. B. Smythe, its vice-president, made in pursuance of the provisions of section 406a, Civil Code?

The term "doing business" as used in section 411, Code of Civil Procedure, means the entry of a corporation into a state other than that wherein it is incorporated, for the purpose of transacting some substantial part of its ordinary business or of exercising some of the functions for which it was created. (*Estate of Wellings,* 192 Cal. 506 [221 Pac. 628]; *Union Oil Associates* v. *Johnson,* 2 Cal. (2d) 727 [43 Pac. (2d) 291, 98 A. L. R. 1499]; *Milbank* v. *Standard Motor Const. Co.,* 132 Cal. App. 67 [22 Pac. (2d) 271].) It is not, however, to be confused with the same term when used in statutes having a different purpose or in proceedings involving different issues. The facts of each case must meet the requirements essential to obtain jurisdiction under the applicable statute. In *State ex rel.* v. *Pioneer Creamery Co.,* 211 Mo. App. 116, 121 [245 S. W. 361], the court said: "If the question relates to the right to serve process upon the corporation, or the right of the corporation to maintain ac-

tion against a resident of this State, a different proposition is presented than is presented where it relates to the right and power of the State to impose conditions or restrictions upon the right of a foreign corporation to do business here.'' (*International Harvester Co.* v. *Kentucky*, 234 U. S. 579 [34 Sup. Ct. 944, 58 L. Ed. 1479].)

At the time of the injury to Hudson occurring in connection with the use of equipment alleged to have been manufactured by The Thew Shovel Company, petitioner was represented in California by two ''distributors'', The Rix Company, Inc., in northern California, and The Le Roi Rix Machinery Company, Inc., in southern California. It was through the former company that the manufacturer sold the equipment in question. These distributors operated with the manufacturer under agreements providing in part as follows: That nothing therein should be represented or construed as constituting the distributor in any way the agent of petitioner. The distributor was granted the exclusive right to sell or buy for sale certain products in a defined territory, there being reserved to the manufacturer the right to conduct direct negotiations for the sale of its products in that territory. The manufacturer also reserved to itself exclusively the right to sell its products to governmental agencies and subdivisions thereof, also to other enumerated large users of its products for delivery into any territory, as well as to purchasers for export, without paying or reserving to the distributor any discounts or commissions. In connection with sales by and for the account of the distributor, prices were fixed by the manufacturer and the conditions specified, all sales, however, to be consummated in the state of the distributor, subject to the approval of the manufacturer. Sales contracts for the account of the distributor of goods not paid for by him were to be assigned to the manufacturer as security, the distributor having the authority to receive and remit to the manufacturer notes and initial payments. In connection with consigned goods, the manufacturer was to retain title to the same and reserved the right to withdraw such goods to fill orders or to replace parts elsewhere. Such consignments were to be made to the distributor only, never to the manufacturer, their sale to be consummated between the distributor and the customer, the distributor assigning any contracts in connection therewith to the manufacturer, with

the understanding ''of course'' that the manufacturer would accept the assignment and be bound by the provisions of the contract. Notes on account of deferred payments were to be taken in the distributor's name and endorsed to the manufacturer as security. The manufacturer agreed to advertise its products through the medium of such recognized trade publications as in its opinion would secure the best results, printed matter furnished by the manufacturer to be distributed by the distributor at his own expense and to the best of his ability. In case the purchaser desired it, the distributor was to provide for installation service, but if an engineer was not available the manufacturer agreed to supply one, the cost of such service in either event to be paid for by the customer. The distributor was to collect down payments, assist in collecting instalments and in adjusting claims for defective parts, remitting to the manufacturer such amounts as were due; the manufacturer under its agreement being entitled to the services of at least one salesman assigned to this particular work. In connection with selling merchandise of this character and ''keeping it sold'', it is necessary that replacement service be readily available. This function was performed by the distributor, who replaced defective parts out of stock on hand, without direct authority from the manufacturer, returning the defective part to the petitioner for credit on the distributor's consigned merchandise account. The distributor was to make weekly written reports to the manufacturer of all prospects and of the status of transactions. The manufacturer thus received the attention of its duly recognized representative, and such consequent financial gain from the actual sale of its wares and products as if it had conducted an office under its own name in this state. In a memorandum, attached to the agreement, upon the subject of ''Consignment Machines'', we find the following: ''The reason for this ruling covering consignment machines and their sale is to avoid the possibility of being involved in *intra*-state business where there might be evidence that we were doing business within the state without having taken out a license to do so. Some states have very peculiar laws in this respect, and to protect ourselves on deferred payment sales, it is absolutely necessary that the above procedure be religiously followed when a machine is sold from a consign-

ment depot. By following the above procedure we maintain an 'Inter-State' status.''

It appears that petitioner's desire not to be involved in intrastate business arose from its unwillingness to take out a license and to comply with attending tax regulations. Whether it succeeded in legally attaining its object is not necessary to pass upon in this proceeding. Suffice to say that whether the business conducted was interstate or intrastate makes no difference if petitioner was ''doing business'' in the State of California within the meaning of that term as used in section 411, Code of Civil Procedure. (*State ex rel.* v. *Pioneer Creamery Co., supra; International Harvester Co.* v. *Kentucky, supra; Knapp* v. *Bullock Tractor Co.,* 242 Fed. 543.) The agreement that the distributor shall not be deemed an agent is not binding upon this court in determining whether petitioner itself was ''doing business'' in this state.

In the sale of the particular shovel involved in this proceeding, an old shovel had been taken over in part payment of the new, title to the old being taken direct by petitioner. The whole transaction was within the knowledge and with the approval of petitioner. The sale was made from consigned stock, through the joint efforts of petitioner and its distributor under the provisions of their agreement, the manufacturer accepting the assignment of the contract and absorbing part of the over-valuation on the trade-in so as to facilitate the sale; the balance of the purchase price was to be collected through their mutual efforts. The petitioner relied to a great extent upon the judgment and discretion of the distributor, and through their cooperation and coordination a substantial portion of petitioner's business was being conducted in this state; ''the volume . . . might run between $150,000 and $300,000 a year''.

From the foregoing we conclude that the trial court was justified in determining that petitioner was transacting business in a substantial way in this state during the period when, according to the complaint, the alleged cause of action arose, and that the above activities constituted ''doing business'' as that term is used in section 411, Code of Civil Procedure. (*Chas. Ehrlich & Co.* v. *J. Ellis Slater Co.,* 183 Cal. 709 [192 Pac. 526]; *Davenport* v. *Superior Court,* 183 Cal. 506 [191 Pac. 911]; *Winfield* v. *United Fruit Co.,* 135 Cal. App.

(Supp.) 791 [24 Pac. (2d) 247] ; *Milbank* v. *Standard Motor Const. Co., supra; Davis* v. *Motive Parts Corp.,* 16 Fed. (2d) 148 ; *Murphy* v. *Campbell Soup Co.,* 40 Fed. (2d) 671; *Knapp* v. *Bullock Tractor Co., supra; Cheli* v. *Cudahy Bros. Co.,* 260 Mich. 496 [245 N. W. 503] ; *International Harvester Co.* v. *Kentucky, supra; Plibrico Jointless Firebrick Co.* v. *Waltham Bleachery & Dye Works,* 274 Mass. 281 [174 N. E. 487].)

█ The next question for consideration is whether or not the corporation was doing business in California at the time of service of summons in the case of *Hudson* v. *The Thew Shovel Co.* To be subject to jurisdiction it is necessary that a foreign corporation shall be doing business in the state at the time of the service of process. (*Jameson* v. *Simonds Saw Co.,* 2 Cal. App. 582 [84 Pac. 289].) The status of "doing business" once established is presumed to continue unless controverted by other evidence. (Code Civ. Proc., sec. 1963, subd. 32; *San Francisco Breweries, Ltd.,* v. *Superior Court,* 80 Cal. App. 433 [251 Pac. 935].)

█ At one time R. F. Deane held a position as "the district manager of what was known as the western territory, including California" for which he received a salary from petitioner. He testified in substance that during such period petitioner also conducted business here independently, without his presence or participation. Subsequent to the date of the alleged accident, petitioner discontinued paying a salary to Deane. It is petitioner's contention, assuming without admitting that it was doing business in California, that such business, if any, ceased when the salary to Deane was discontinued. The record discloses that the principal part played by Deane in the company's business here was to advise and assist in southern and sometimes in northern California in the sale of petitioner's stock in trade, and the record further shows that at the time of and subsequent to the service of summons petitioner's products continued to remain on sale with The Rix Company of northern California under an agreement similar in form and substance to the agreement in existence when the particular shovel referred to in this proceeding was sold. The distributor was not an independent contractor. Under such circumstances it appears that petitioner was doing business at the time of the service of summons. (*Carroll Electric Co.* v. *Freed Eisemann Radio Corp.,*

50 Fed. (2d) 993 [60 App. D. C. 228]; *Milbank* v. *Standard Motor Const. Co., supra.*)

The final contention of petitioner is that the service upon Smythe is void for the reason that he was within this state only temporarily and not in a representative capacity, and that he did not transact any business in California that would make petitioner through him amenable to service of process here. It is the accepted and approved rule that mere service upon an officer of a foreign corporation temporarily within a state other than that of its domicile is not sufficient to confer jurisdiction unless such officer at the time of service is actually transacting business in a representative capacity on behalf of the corporation. (*Nickerson* v. *Warren City Tank & Boiler Co.*, 223 Fed. 843; *Knapp* v. *Bullock Tractor Co., supra; Spokane Merchants' Assn.* v. *Clere Clothing Co.*, 84 Wash. 616 [147 Pac. 414]; *Premo Specialty Mfg. Co.* v. *Jersey-Creme Co.*, 200 Fed. 352 [43 L. R. A. (N. S.) 1015]; *State ex rel. Taylor Laundry Co.* v. *Second Judicial Dist. Court, etc.*, 102 Mont. 274 [57 Pac. (2d) 772].)

Smythe was the vice-president of petitioner corporation, the officer who signed the last agreement between petitioner and The Rix Company, likewise the officer who approved the contract of sale for the particular shovel referred to in this proceeding. It must be admitted that his presence in California was temporary, his purposes being to attend a convention of the American Road Builders Association held in San Francisco and thereafter to visit his grandmother in the southern part of California. Respondent claims that an inference may be drawn that the expenses of the trip were paid by petitioner corporation. We can find no evidence to substantiate this claim but, irrespective of how the expenses were met, the evidence shows that Smythe, in the company of another representative of petitioner corporation, was in attendance upon a convention being held to display wares and discuss problems pertinent to the business of petitioner corporation. Regardless of any pleasure attaching to his attendance upon the convention, the evidence shows that Smythe stepped out of that sphere and actually took part in a conference relative to a settlement of the suit brought by Hudson against The Thew Shovel Company, and several days later the San Francisco legal representatives of petitioner corporation attempted to compromise the claim. We must agree with

the evident conclusion of the trial court that at the time of the service of summons Smythe was present in this state as an official representing petitioner.

Petitioner contends that this one isolated instance of transaction of business by Smythe was not sufficient to make him amenable to process. In support of such contention petitioner cites a number of cases. In *Apgar* v. *Altoona Glass Co.*, 92 N. J. Eq. 352 [113 Atl. 593], the court held that attendance upon a convention was not doing business and that the service was void unless there was proof that otherwise the corporation was *doing business.* In *Walton N. Moore Dry Goods Co.* v. *Commercial Industrial Co.*, 276 Fed. 590 (affirmed in 282 Fed. 21), service was made upon an officer of a Russian corporation temporarily within the state in an effort to settle a legal claim. In this case the governing contract had been made and was to be performed in Russia, not in California. It was held that the mere presence in this state of a representative of a foreign corporation for the purpose of adjusting a legal controversy was not sufficient, standing alone, to constitute *doing business.* A somewhat similar holding is found in *Painter* v. *Colorado Springs & C. C. Ry. Co.*, 127 Mo. App. 248 [104 S. W. 1139]. In *Fox* v. *Hale & Norcross S. M. Co.*, 108 Cal. 369 [41 Pac. 308], service was made upon a mill superintendent in attendance upon the trial of the case; it was held that he was not attending to the business of the corporation. In *Knapp* v. *Bullock Tractor Co.*, *supra,* it was held that the officer must be engaged in the state in a representative capacity for the corporation. In *Vance* v. *Chicago Portrait Co.*, reported with the Knapp case, the court said that the party upon whom service was made appeared ''purely in his private capacity on a pleasure trip''. (242 Fed. 552.) Petitioner fails to distinguish between proof that the corporation was ''doing business'' and whether or not the representative was amenable to process.

 Having determined that the corporation petitioner was doing business in this state at the time of the service of the summons, the only question now before us is whether or not the party served was an official of sufficient representative capacity to insure the corporation defendant being duly and regularly advised of the pendency of the Hudson action in order that proper appearance could be made therein. The party served was a vice-president and in addition thereto pre-

sumably acquainted with the general aspects of the case; he had for a period during his stay in California for pleasure assumed the role of an official in an attempt to transact the business of adjusting a claim against the corporation of which he was an officer. The purpose of section 406a, Civil Code, is fulfilled if one of sufficient dignity is served to reasonably assure notice to the corporation. (*Milbank* v. *Standard Motor Const. Co., supra; Denver & R. G. R. Co.* v. *Roller,* 100 Fed. 738 [49 L. R. A. 77].) An officer of a foreign corporation present in this state on official business relating to the matter upon which he is served is amenable to process. (*Hand* v. *Superior Court of Los Angeles County,* 42 Cal. App. 168 [183 Pac. 456] ; *Premo Specialty Mfg. Co.* v. *Jersey-Creme Co., supra; Spokane Merchants' Assn.* v. *Clere Clothing Co., supra.*)

The peremptory writ is denied.

Peters, P. J., and Goodell, J., *pro tem.,* concurred.